IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 19, 2010 Session

## ANNE S. PHILLIPS v. ANDERSON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Anderson County**
**No. A5LA0240     Jon Kerry Blackwood, Special Judge**

**No. E2009-01883-COA-R3-CV - FILED NOVEMBER 10, 2010**

This appeal involves a retaliatory discharge claim. Employee claims that she was discharged after reporting her supervisor's unlawful activities. Employer denied that employee was discharged, claimed that she quit, and demonstrated that the State terminated the grant funding the program overseen by employee. A jury trial commenced, and at the close of all proof, employer moved for a directed verdict. The trial court granted the motion for directed verdict and found that employee failed to prove a causal link between her discharge and her decision to engage in a protected activity. Employee appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

David A. Stuart, Clinton, Tennessee, for the appellant, Anne S. Phillips.

Arthur F. Knight, Knoxville, Tennessee, for the appellee, Anderson County, Tennessee.

**OPINION**

## I. FACTUAL BACKGROUND

Anne S. Phillips was recruited by Anderson County, Tennessee ("the County") to start a drug and alcohol abuse counseling program for women inmates and probationers. The State of Tennessee provided a grant to fund the "Ladder of Hope" program ("the Program"), and Ms. Phillips became the Executive Director. Alan Beauchamp, former Director of Probation for the County, was Ms. Phillips' supervisor and served as the Program Director; his responsibilities included grant writing and managing the finances for the Program. The

grant was a "reimbursement grant" meaning that the County initially provided the funds for the Program, and the County would later seek reimbursement from the State.

While serving as the Executive Director, Ms. Phillips grew concerned about Mr. Beauchamp's conduct and his interactions with the women involved in the Program. Ms. Phillips expressed her concerns in a meeting with Mayor Rex Lynch ("Mayor Lynch") in November 2003, and gave him a letter outlining her concerns regarding Mr. Beauchamp. She also expressed her concerns to the grant manager of the Program for the State. In her letter, dated November 12, 2003, Ms. Phillips' chief complaint about Mr. Beauchamp included abuse of power and sexual harassment. She complained:

> The most damaging are his manipulation and co-mingling of funds to pay employees and his inappropriate relationship with young women staffers and women offenders. This is a major liability for the county should any of these women come across a smart attorney.

Mayor Lynch took the allegations seriously, and he later removed Mr. Beauchamp from his position as Program Director and Director of Probation. Mayor Lynch then asked Ms. Phillips to formulate additional guidelines for the Program. Thereafter, Ms. Phillips was named as the interim administrator of the Program by a formal letter from Mayor Lynch in December 2003. To assist with the transition, Mr. Beauchamp, who remained the County's Director of Buildings and Grants, transferred all the necessary information to Ms. Phillips for the upkeep of the Program. The letter promoting Ms. Phillips was a trial exhibit; in that letter, Mayor Lynch stated:

> Your fairly comprehensive understanding of the program will enable you to serve as the Interim Administrator until such time as we can find a replacement that can be adequately and responsibly be brought up to speed.

> I have requested that Alan Beauchamp, current Administrator, assist you in the transfer of necessary information and paperwork.

In March 2004, the Office of Criminal Justice Programs ("OCJP"), an office within the State's Department of Finance and Administration, conducted a grant monitoring review of the Program. After visiting the Program's office, OCJP decided to terminate the grant funding the County's Program. In a letter dated April 5, 2004, OCJP wrote Mayor Lynch informing him of the State's intent to terminate the grant effective June 30, 2004. Specifically, the letter stated:

> After visiting the office, reviewing the Ladder of Hope program and fiscal

records and interviewing clients, it has become clear that the magnitude of the problems are enormous. Serious concerns related specifically to the inadequate implementation of the program, lack of sufficient documentation as well as the complete lack of programmatic and fiscal infrastructure supporting the project within the Anderson County Department of Probation. Additionally, records indicate that only eight (8) clients have been served to date, with only five (5) clients currently receiving services.

Due to the serious nature of the findings documented in the review, the Department of Finance and Administration, Office of Criminal Justice Programs has no recourse other than to terminate the Anderson County Government Ladder of Hope contract effective June 30, 2004. Prior to the termination of the grant, please do not accept any new clients into the program. In addition, current reimbursement reports will be approved for payment in the amount of non-questioned costs of $4974.24.

In addition to the letter, OCJP summarized the findings from the grant monitoring review, as follows:

1. Anderson County Government did not meet the requirements of the grant agreement.

2. Anderson County Government did not meet all the personnel requirements.

3. Anderson County Government reported reimbursement expenditures associated with costs lacking OCJP approval for such costs.

4. Anderson County Government did not have approved subcontracts for professional services.

5. Anderson County Government reported expenditures that appear to be excessive and not in accordance with the approved budget.

6. Anderson County Government did not meet all the requirements for case files.

7. Anderson County Government did not comply with reporting requirements.

After receiving OCJP's letter terminating the Program's grant, Ms. Phillips, Mayor Lynch, and Gail Cook, former Director of Accounts and Budgets for the County, traveled to

Nashville, Tennessee, and met with State officials in an attempt to recoup some of the expenses related to the Program. Ultimately, the State agreed to reimburse most of the expenses for the Program except for approximately $5,000.

After settling the expenses with the State, testimony at trial revealed that from the County's perspective, the Program was over. However, Ms. Phillips took issue with the State's letter and report terminating the grant. Mayor Lynch testified that he instructed Ms. Phillips to not respond to the grant monitoring review, but despite Mayor Lynch's instruction, she drafted and sent a written response to the State. Additionally, at some point before the trip to Nashville, Ms. Phillips' letter was "leaked" outside of the County's office.

Following the trip to Nashville, Mayor Lynch and Ms. Cook met with Ms. Phillips to inform her that the Program would end and to instruct her to submit a final report regarding the Program to the State. At this point, Ms. Phillips claims that she was terminated by the County. Mayor Lynch and Ms. Cook testified that Ms. Phillips quit and refused to submit a final report.

Ms. Phillips filed a complaint, alleging retaliatory discharge under the common law and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304. The County denied liability. After the close of all evidence in the jury trial, the County moved for a directed verdict. The trial court granted the motion and dismissed Ms. Phillips' claims. This appeal ensued.

## II. ISSUE

The sole issue presented for review is whether the trial court erred in granting the County's motion for directed verdict.

## III. STANDARD OF REVIEW

A trial court's decision to grant a motion for directed verdict is a question of law. *Underwood v. HCA Health Servs. of Tennessee, Inc.*, 892 S.W.2d 423, 425 (Tenn. Ct. App. 1994). We review a question of law de novo with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

The standard for reviewing a motion for directed verdict was articulated by the Tennessee Supreme Court in *Johnson v. Tennessee Farmers Mut. Ins. Co.*,

In reviewing the trial court's decision to deny a motion for a directed verdict,

an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied.

205 S.W.3d 365, 370 (Tenn. 2006) (internal citations omitted).

A motion for directed verdict is a question of law that requires this court to answer one question: whether the non-moving party presented enough evidence to create an issue of fact for a jury to resolve. *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (citations omitted). A motion for a directed verdict should not be granted "if the party with the burden of proof has presented sufficient evidence to create an issue of fact for the jury to decide." *Id*. (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999). A party has created a jury issue when there is doubt about the conclusions drawn from the evidence. *Id*. There is no jury issue when reasonable minds can only reach one conclusion from the evidence. *Id*; *see also Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000). "A case should go to the jury, even if the facts are undisputed, when reasonable persons could draw conflicting conclusions from the facts." *Keylon v. Hill*, No. E2003-01054-COA-R3-CV, 2003 WL 22927143, at *3 (Tenn. Ct. App. E.S., Dec. 11, 2003) (quoting *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000)).

## IV. DISCUSSION

Tennessee follows the "at-will" employment doctrine. At-will employment means that employment contracts of indefinite duration are terminable at the will of the employer or employee for any or no cause. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534-35 (Tenn. 2002). Nonetheless, there are important restrictions on an employer's right to terminate an employee. *Id.* at 535. Specifically, an employer's decision to terminate an employee is actionable when it contravenes a clearly established public policy. *Chism v. Mid South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988). To prevail on a common law claim of retaliatory discharge, an employee must prove: (1) that an at-will employment relationship existed; (2) that the employee was discharged; (3) that the employee was discharged for attempting to exercise a statutory or constitutional right, or for any other reason that violates a clear public policy; and (4) that such action was a substantial factor in the employer's

decision to discharge the employee. *Guy*, 79 S.W.3d at 535; *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 557-58 (Tenn. 1993).

In addition to the common law action for retaliatory discharge, the Tennessee General Assembly adopted a statutory cause of action under the Tennessee Public Protection Act ("TPPA"), commonly referred to as the "Whistleblower Act." *See* Tenn. Code Ann. § 50-1-304(d)(1) (Supp. 2009). Under TPPA, an employee cannot "be discharged or terminated soley for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). Within the meaning of the statute, "illegal activities" are: "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304 (a)(3). To prevail on a whistleblower claim under the TPPA, a plaintiff must establish by a preponderance of the evidence: (1) his or her status as an employee of the defendant; (2) his or her refusal to participate in, or to remain silent about, illegal activities; (3) employer's discharge of the employee; (4) exclusive causal relationship between plaintiff's refusal to participate in or remain silent about illegal activities and employer's termination of plaintiff. *Hubrig v. Lockheed Martin Energy Sys.*, No. 03A01-9711-CV-00525, 1998 WL 240128, at *7 (Tenn. Ct. App. E.S., May 4, 1998).

Accordingly, the first three elements of a statutory retaliatory discharge claim are identical to the elements of a cause of action under the common law. The fourth element of a TPPA claim differs from the common law claim in that, to benefit from statutory protection, an employee must demonstrate that his or her refusal to participate in or remain silent about illegal activities was the *sole reason* for his or her discharge. *Guy*, 79 S.W.3d at 535-37 (emphasis added).

Whistleblower protection was designed to remain a narrow exception to the at-will employment doctrine. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 n. 3 (Tenn. 1997); *Chism*, 762 S.W.2d at 556. In whistleblower cases, courts are not limited to determining whether there is a violation of a law or regulation. *Guy*, 79 S.W.3d at 538. The employee does not qualify for whistleblower protection by merely reporting illegal activity. *Frankin v. Swift Trans. Co.*, 210 S.W.3d 521, 530-31 (Tenn. Ct. App. 2006). It is the court's task to determine whether the whistleblowing activity furthered an important public policy interest. *Guy*, 79 S.W.3d at 538. To that end, it is important that the employee's exposure of illegal practices does more than advance the employee's private interest. *Id.* at 538 n. 4. The employee need not report the alleged illegal activities directly to law or regulatory enforcement officials, but the employee should make a report to some entity other than the person engaging in the alleged activities. *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d 364, 371 n. 1 (Tenn. Ct. App. 2005). It is the employee's burden to establish each element of a cause of action for retaliatory discharge. *Conaster v. Clarksville Coca-Cola Bottling*

*Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (quoting *Anderson*, 857 S.W.2d at 558-59). "If, and only if, the employee presents a prima facie case of retaliation, then the burden shifts to the employer to prove a legitimate, non-pretextual reason for discharging the employee." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 389 (Tenn. Ct. App. 2006) (citing *Anderson*, 857 S.W.2d at 559); *see also Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 426-27 (Tenn. Ct. App. 1992).

In this case, the trial court found that Ms. Phillips failed to prove the fourth element of a statutory claim for retaliatory discharge. The trial court dismissed the case because there was not sufficient proof of an exclusive causal relationship between her refusal to participate in or remain silent about illegal activities and the discharge. Specifically, the trial court found:

> [P]laintiff bears a formidable burden in showing that the refusal to participate in or remain silent is the exclusive causal relationship between the plaintiff's activity and the termination. In this case, the alleged activity occurred from July 1st, 2003, up until maybe November, December 200[3]. At that point, Mr. Beauchamp was removed, and yet plaintiff continued to operate in the same position or in her elevated position, and it wasn't until the reimbursement issues became an issue with the State of Tennessee and Anderson County that the eventual termination took place.

However, Ms. Phillips contends that in taking the strongest legitimate view of the evidence in her favor as the nonmoving party, the trial court erred in granting a directed verdict. Ms. Phillips argues that the trial testimony supports her contention that reasonable minds could conclude that Mayor Lynch's reason for her termination was only pretext and that she was actually discharged because of her decision to engage in a protected activity. At trial, three witnesses testified: Ms. Phillips, Mayor Lynch, and Ms. Cook. In Ms. Phillips view, she was terminated because she reported Mr. Beauchamp's unlawful activity. She testified:

> Because I told Rex [Mayor Lynch]. . .about Alan [Beauchamp] and his behavior, and he just wanted rid of the program. He didn't want to deal with Alan. He didn't want to – he just didn't want to deal with it, so he just decided to cancel the program. And when the sheriff banned Alan from the jail, he was forced to have to do some things, and then he got madder at me, and then when the letter came out, he got even madder at me. He accused me of releasing the letter, and then he just got angrier and angrier. And then when I got back from vacation, he and Gail [Cook]had decided we want rid of this as fast as we can get rid of it and get it over and done with it, and so that's what they did.

-7-

In Mayor Lynch's trial testimony, he recounted the trip to Nashville and stated that it was his "understanding that the State was going to cancel, terminate the program as of June 30th." He further testified that he agreed with the State and believed that the Program should be terminated immediately because of his concerns "that we were opening up the County to some liability. Some people may not think $50,000 is a lot of money in a $70 million county budget, but a dollar is important when it's taxpayers' money." Mayor Lynch further testified that the County had to pay the unallowable expenses from the Program. In explaining the reason for terminating the Program before the June 30th deadline, Mayor Lynch stated:

> We spent a lot of time devoted to this program, and I was concerned that if at this point if we keep the program going another six weeks or however long it was, well, there's an opportunity for some more unallowable expenses. I didn't want to have to go back to the State of Tennessee and once again defend why we had spent money on a program we just got back from having to defend. So I was concerned about liability.

There was a dispute at trial regarding whether Ms. Phillips quit or the County discharged her. Both Ms. Cook and Mayor Lynch testified that because it was in the County's best interest to terminate the Program, they directed Ms. Phillips to prepare the final report for the Program, but she refused to do so and subsequently quit. However, Ms. Phillips testified that after returning from her vacation on May 17, 2004, she met with Ms. Cook and Mayor Lynch. According to Ms. Phillips, Ms. Cook and Mayor Lynch informed her that the Program would end in two days and asked her to prepare a final report. Ms. Phillips explained that she would need more time to tie up the loose ends of the Program and complete the report. She also protested such a short time frame considering that the State had given a deadline of June 30, 2004. After she returned to her office, two County employees appeared asking for her office computer and office key and then escorted her from the building. She maintains that she never intended to quit but was instead terminated. The Separation Notice filed with the Tennessee Department of Labor and Workforce Development includes a mark indicating that Ms. Phillips quit and that the circumstances for the separation were "Voluntary Resignation." The Separation Notice also included a mark on the line that read: "If lack of work, indicate if the layoff is permanent [or] temporary." The "permanent" box is marked.

Our review is limited to the question of whether Ms. Phillips failed to present enough evidence supporting every essential element of a cause of action for retaliatory discharge under either TPPA or the common law. Having reviewed the record in this case, we are inclined to agree with the trial court's finding that Ms. Phillips failed to offer proof that her refusal to remain silent about unlawful activities was either an exclusive causal factor under TPPA or a substantial factor under the common law.

-8-

Even if we find that Ms. Phillips was discharged, there is not enough evidence in the record to sustain a common law or statutory claim of retaliatory discharge. As courts have previously observed regarding the causation element of a retaliatory discharge claim, "direct evidence of [the employer's] motivation is rarely within the plaintiff's possession." *Newcomb*, 222 S.W.3d at 391 (Tenn. Ct. App. 2006) (quoting *Guy*, 79 S.W.3d at 534). Causation, or the employer's motivation in discharging the employee, must be gleaned from careful consideration of the entirety of the evidence of the circumstances surrounding the employer's action in light of the employee's refusal to participate in or remain silent about alleged illegal activities. *Id.* Because we recognize that plaintiffs in retaliatory discharge cases will primarily rely on circumstantial evidence to establish liability, *see Austin v. Shelby County Gov't*, 3 S.W.3d 474, 480-81 (Tenn. Ct. App. 1999), that evidence must be more than the plaintiff's speculation on why the termination ultimately occurred. *Newcomb*, 222 S.W.3d at 391 (noting that "A plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship.") (supporting citations omitted). As this court noted in *Foster v. Colonial Dev., Inc.*, "circumstantial evidence must be compelling on the issue that retaliation was a substantial factor in the decision to terminate the Plaintiffs." *Foster v. Colonial Dev., Inc.*, No. E2000-02917-COA-R3-CV, 2002 WL 185477, at *5 (Tenn. Ct. App. E.S., Feb. 6, 2002) (citing *Thomason v. Better-Bilt Aluminum Products*, 831 S.W.2d 291(Tenn. Ct. App. 1992)).

Recently, the Tennessee Supreme Court addressed the issue of a retaliatory discharge claim at the summary judgment phase in *Gossett v. Tractor Supply Co.*, No. M2007-02530-SC-R11-CV, 2010 WL 3633459, at *1 (Tenn. Sept. 20, 2010). While noting the similarity of motions for summary judgment and directed verdict, the Court observed:

> In contrast, when an employer moves for directed verdict, the employee has had the opportunity to present his or her case in full. *See* Tenn. R. Civ. P. 50.01. "Uncontradicted evidence that the employee was discharged for a legitimate, non-pretextual reason" at the directed verdict stage shows that the employee did not present any proof at trial of a retaliatory reason for the discharge. The employer therefore would be entitled to directed verdict because the strongest legitimate view of these facts in favor of the employee, with all evidence construed in the employee's favor and all countervailing evidence discarded, permits a reasonable person to reach only one conclusion on the essential causation element.

2010 WL 3633459, at *9 (citing *Johnson*, 205 S.W.3d at 370).

In this case, the only evidence presented at trial concerning causation or the County's motivation for Ms. Phillips' discharge was her own testimony. Her testimony alone is not sufficiently compelling to create an issue of fact for a jury to resolve. Ms. Phillips' testimony amounted to speculation as to the reason why she was terminated and it was undercut by other circumstantial and direct evidence. First, Ms. Phillips' employment ended approximately six months after her report of Mr. Beauchamp's activities to Mayor Lynch. Second, Ms. Phillips was given more responsibility after Mr. Beauchamp's removal from the probation department resulting in a promotion. Third, the Program ended after the State terminated the grant due the County's mishandling of grant. Lastly, while the County decided to end the Program a month before the State's deadline, the County's decision to terminate the Program prematurely seems reasonable and legitimate due to all the problems related to its administration.

In light of the facts noted above, and specifically noting the State's termination of the Program's grant by June 30, 2004, a directed verdict was appropriate. Ms. Phillips failed to offer any proof, outside of her own speculative testimony, demonstrating the County's motivation for her discharge. Accordingly, we hold that there is not enough evidence for a jury issue and affirm the trial court's grant of a directed verdict in favor of the County.

## V. CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Anne S. Phillips. This case is remanded, pursuant to applicable law, for the collection of costs assessed below.

_____
JOHN W. McCLARTY, JUDGE

-10-