## Robert Steven JOHNSON

v.

## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY.

Supreme Court of Tennessee, at Knoxville.

May 3, 2006 Session.

Aug. 28, 2006.

---

John T. Johnson, Jr., Knoxville, Tennessee, and Michael Ross Campbell, Chattanooga, Tennessee, for the appellant, Tennessee Farmers Mutual Insurance Company.

Bryan L. Capps and Sidney W. Gilreath, Knoxville, Tennessee, for the appellee, Robert Steven Johnson.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J.; ADOLPHO A. BIRCH, JR. and CORNELIA A. CLARK, JJ.; and JOSEPH M. TIPTON, Sp.J., joined.

This action arises from a collision involving three vehicles. Judgment was rendered against the defendant Johnson. Johnson filed suit against his insurer alleging that the judgment in excess of his liability coverage was the result of the insurer's bad faith in failing to adequately investigate and settle his case within the policy limits. The jury determined that the insurer acted in bad faith and awarded a judgment against the insurer. We affirm the judgment of the Court of Appeals that the insurer's motion for a directed verdict was properly denied but reverse the Court of Appeals' judgment setting aside the jury verdict. We reinstate the jury verdict in favor of Johnson.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 1994, a collision occurred between a vehicle driven by Robert Steven Johnson ("Johnson") and a vehicle driven by Christopher Moore ("Moore"). Johnson was driving in the left inside lane when a van driven by an unknown motorist ("John Doe") suddenly moved left into his lane of traffic. In an attempt to avoid contact with the van, Johnson swerved left, crossing the median into oncoming traffic and colliding with Moore's vehicle. Moore and Johnson suffered serious injuries. Both Johnson and Moore were insured under separate liability policies issued by Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"). Both policies had minimum limits of liability coverage ($25,000/$50,000) and equal limits of uninsured motorist coverage.

Moore filed a lawsuit against Johnson and John Doe. Johnson also filed a lawsuit against John Doe. Tennessee Farmers was served as the uninsured motorist ("UM") carrier in both actions against John Doe. The UM claims of both Johnson and Moore against John Doe were settled by Tennessee Farmers, which paid its UM coverage policy limits to each policyholder. Moore offered to settle his liability claim against Johnson for Johnson's policy limits of $25,000, but Tennessee Farmers refused.

Moore's action against Johnson resulted in a jury verdict in favor of Moore. The jury allocated 50% of the fault to Johnson and 50% to John Doe and awarded damages to Moore in the amount of $387,500. The judgment against Johnson, $193,750, exceeded Johnson's liability coverage of $25,000. Johnson unsuccessfully appealed the verdict. He subsequently filed a lawsuit against Tennessee Farmers alleging that the judgment against him in excess of his liability coverage was the result of Tennessee Farmers' bad faith in failing to adequately investigate and settle his case within the policy limits. Tennessee Farmers moved for a directed verdict, arguing that there was no evidence from which the jury could find that it acted in bad faith in refusing to settle Moore's claim against Johnson. The trial court denied the motion for a directed verdict. The jury determined that Tennessee Farmers acted in

bad faith and awarded a judgment against Tennessee Farmers in the amount of $279,430.92 in compensatory damages. The Court of Appeals held that the trial court properly denied Tennessee Farmers' motion for a directed verdict but erred in failing to give four special jury instructions requested by Tennessee Farmers and in improperly commenting upon the evidence. The Court of Appeals reversed the judgment and remanded the case for a new trial. We granted review.

## II. ANALYSIS

### A. Directed Verdict

In reviewing the trial court's decision to deny a motion for a directed verdict, an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Gaston v. Tenn. Farmers Mut. Ins. Co.,* 120 S.W.3d 815, 819 (Tenn.2003). A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. *Id.* The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. *Cecil v. Hardin,* 575 S.W.2d 268, 270 (Tenn.1978). Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. *Benson v. Tenn. Valley Elec. Coop.,* 868 S.W.2d 630, 638–39 (Tenn.Ct. App.1993). Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied. *Hurley v. Tenn. Farmers Mut. Ins. Co.,* 922 S.W.2d 887, 891 (Tenn.Ct.App.1995).

"It is well established that an insurer having exclusive control over the investigation and settlement of a claim may be held liable to its insured for an amount in excess of its policy limits if as a result of bad faith it fails to effect a settlement within the policy limits." *State Auto. Ins. Co. of Columbus, Ohio v. Rowland,* 221 Tenn. 421, 427 S.W.2d 30, 33 (1968). Bad faith refusal to settle is defined, in part, as an insurer's disregard or demonstrable indifference toward the interests of its insured. *See S. Fire & Cas. Co. v. Norris,* 35 Tenn.App. 657, 250 S.W.2d 785, 790–91 (1952). This indifference may be proved circumstantially. *Id.* at 791. Bad faith on the part of the insurer can be proved by facts that tend to show "a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money or any intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability imposed upon it by its policy." *Goings v. Aetna Cas. & Sur. Co.,* 491 S.W.2d 847, 849 (Tenn.Ct.App.1972). If the claim exceeds the policy limits, then the insurer's conduct is subject to close scrutiny because there is a potential conflict of interest between the insurer and the insured. *Tenn. Farmers Mut. Ins. Co. v. Wood,* 277 F.2d 21, 35 (6th Cir.1960).

To discharge its duty to act in good faith, an insurer must exercise ordinary care and diligence in investigating the claim and the extent of damage for which the insured may be held liable. *S. Fire & Cas. Co.,* 250 S.W.2d at 790–91. The manner in which the insurer investigates the case "has an important bearing upon the question of bad faith in refusing or failing to settle the claim." *Id.* at 791. Ordinary care and diligence in investigation require the insurer to investigate the claim to such an extent that it can exercise an honest judgment regarding whether the claim should be settled. *Perry v. U.S. Fid. & Guar. Co.,* 49 Tenn.App. 662, 359 S.W.2d 1,

6–7 (1962). Courts must review the facts that were known to the insurer and its agents and that should have been considered in deciding whether to settle. *Id.* at 7.

Mere negligence is not sufficient to impose liability for failure to settle. *S. Fire & Cas. Co.*, 250 S.W.2d at 792. Moreover, an insurer's mistaken judgment is not bad faith if it was made honestly and followed an investigation performed with ordinary care and diligence. *Perry*, 359 S.W.2d at 7. However, negligence may be considered along with other circumstantial evidence to suggest an indifference toward an insured's interest. *S. Fire & Cas. Co.*, 250 S.W.2d at 790–91. The question of an insurance company's bad faith is for the jury if from all of the evidence it appears that there is a reasonable basis for disagreement among reasonable minds as to the bad faith of the insurance company in the handling of the claim. *Id.* at 790.

The evidence showed that the lanes of traffic at the scene of the accident were twelve feet wide, that the median was four feet wide, and that Johnson's car was five feet wide. According to deposition testimony, John Doe's van came, at most, about halfway, or six feet, into Johnson's lane. A jury, therefore, reasonably could find that Johnson had sufficient room to avoid John Doe's van without crossing the median and colliding with Moore's vehicle. Furthermore, deposition testimony revealed that Johnson may have been traveling in excess of the posted speed limit. Johnson's attorney, George Buxton ("Buxton"), summarized the deposition testimony and sent the summaries to the field claims representative Tennessee Farmers had assigned to investigate the accident, Dennis Hinkle ("Hinkle"). Hinkle, however, admitted that he did not read Buxton's deposition summaries in detail. Hinkle conceded that he was not aware of the lane measurements prior to trial, and he also conceded that had he been aware of all of the facts prior to trial, he would have been concerned that fault would be assessed against Johnson. At the time of depositions, Moore's medical bills totaled $66,412.35. Both Hinkle and Buxton were aware that any percentage of fault allocated to Johnson would result in an award in favor of Moore greatly in excess of Johnson's policy limits given the severity of Moore's injuries. *See, e.g., Rowland*, 427 S.W.2d at 34 (noting that bad faith " 'is most readily inferable when the severity of the plaintiff's injuries is such that any verdict against the insured is likely to be greatly in excess of the policy limits and further when the facts of the case indicate that a defendant's verdict on the issue of liability is doubtful' ") (quoting *Harris v. Standard Accident & Ins. Co.*, 191 F.Supp. 538, 540 (S.D.N.Y.1961)).

Attorney Thomas Scott ("Scott") testified as an expert witness on behalf of Johnson. Scott testified that diligence required re-evaluation of Moore's claim after the depositions. Scott opined that after depositions had been taken, Tennessee Farmers had information that should have put it on notice that there was a significant chance of a judgment in excess of Johnson's liability policy limits. Scott further testified that, in his opinion, Tennessee Farmers failed to adequately evaluate the case, that it should have settled the case, and that its failure to do so was in bad faith. Taking the strongest legitimate view of the evidence in favor of Johnson, the non-moving party, a jury reasonably could conclude that Tennessee Farmers was indifferent to Johnson's financial exposure as evidenced by its failure to fully evaluate all facts and settlement options. Because there was sufficient evidence on which to base the jury's finding that Tennessee Farmers was guilty of bad faith,

the trial court did not err in permitting the jury to decide the issue.

### B. Jury Instructions

 The trial court declined to give certain special jury instructions requested by Tennessee Farmers. A trial court should instruct the jury upon every issue of fact and theory of the case that is raised by the pleadings and is supported by the proof. *Street v. Calvert*, 541 S.W.2d 576, 584 (Tenn.1976); *Spellmeyer v. Tenn. Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 846 (Tenn.Ct.App.1993). "Where a special instruction that has been requested is a correct statement of the law, is not included in the general charge, and is supported by the evidence introduced at trial, the trial court should give the instruction." *Spellmeyer*, 879 S.W.2d at 846. Reversal of a judgment is appropriate, however, only when the improper denial of a request for a special jury instruction has prejudiced the rights of the requesting party. *Id.* It is not sufficient that refusal to grant the requested instruction *may* have affected the result; "[i]t must affirmatively appear that it did in fact do so." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn.1992). Tennessee courts view the jury charge in its entirety and consider the charge as a whole in order to determine whether the trial judge committed prejudicial error. *Id.* It is not error to deny a requested instruction if its substance is covered in the general charge. *Id.* at 445.

### 1. Special Jury Instruction Request No. 4

 The fourth special jury instruction requested by Tennessee Farmers was as follows:

Mere negligence on the part of an insurance company in failing to settle a claim against its insured is not sufficient to impose liability against the insurance company. Before an insurance company can be held liable for failing to compromise or settle a claim, the refusal to settle within the policy limit must be fraudulent or in bad faith.

The trial court's general charge instructed the jury that a mere mistake in judgment is not sufficient to impose liability for bad faith refusal to settle and stated that the failure to settle a case based upon a mistake in judgment is not bad faith if the company made an honest judgment based upon an adequate investigation. The trial court instructed the jury that

[a] mere mistake in judgment by the insurance company does not constitute quote "bad faith" end quote. Quote "bad faith" by the insurance company is, one, failure to investigate a claim to such an extent that it would be in a position to exercise honest judgment as to whether a claim should be settled, or two, failure to fairly consider the facts relative to the accident and a claimant's injuries known to it whether they are the actual facts or not and deciding whether the insured should or should not settle, or three, failure of the insured [sic] with the right to control the litigation and settlement to fairly consider the rights and interest of the insured as compared to the interest of the insurance company.

The trial court further explained that

[a] mere mistake in judgment will not constitute bad faith, that is, if the insurer dealt fairly with the insured and acted honestly and according to its best judgment, it is not liable as it owed its insured no duty to settle merely because a settlement could be made within the limits of the policy.

Finally, the trial court stated that

[i]f Tennessee Farmers made an honest judgment and fair investigation of the

claim against Robert Johnson and exercised reasonable judgment based upon that investigation, then a mistake in judgment is not bad faith and will not render it liable for failure to settle the claim. There's no duty to settle a claim merely because settlement could have been reached within the policy limits. If a failure to negotiate a settlement is a result of a reasonable business judgment made after weighing all of the interests, then there is no liability, even if the decision not to settle turns out to be quite wrong.

The trial court's charge is a correct statement of the law. The trial court, however, did not charge the jury that fraud could be an alternate basis for finding a bad faith refusal to settle. Because Johnson neither alleged nor sought to prove fraud, the trial court properly declined to give an instruction concerning fraudulent behavior.

### 2. Special Jury Instruction Request No. 6

■ The sixth special jury instruction requested by Tennessee Farmers was as follows:

Bad faith embraces more than bad judgment or negligence and it imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud, and it embraces an actual intent to mislead or deceive another.

We are aware of no Tennessee cases holding that an insured must prove dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will "partaking of the nature of fraud," or an actual intent to mislead or deceive another to obtain a judgment for bad faith refusal to settle. Although this requested instruction properly states that "negligence" and "bad

judgment" are not enough to establish bad faith, this instruction was adequately covered in the trial court's jury charge. *See id.* We hold that the trial court properly declined to give this requested instruction.

### 3. Special Jury Instruction Request No. 14

■ The fourteenth special jury instruction requested by Tennessee Farmers was as follows:

Bad faith on the part of an insurer is a frivolous or unfounded refusal to pay the proceeds of the insurance policy. Such conduct imports a dishonest purpose and means a breach of the duty of good faith and fair dealing through some motive of self-interest or ill will. Mere negligence or bad judgment is not bad faith.

This requested instruction is similar to Special Jury Instruction Request No. 6 in suggesting that bad faith requires evidence that the insurer acted with dishonesty, ill will, or deceit. Tennessee law does not require such proof to prevail in an action for bad faith refusal to settle. The trial court did not err in declining to charge this requested instruction.

### 4. Special Jury Instruction Request No. 12

■ The twelfth special jury instruction requested by Tennessee Farmers was as follows:

I charge you that Tennessee Farmers did not have any duty to settle or pay the uninsured motorist claims of either Christopher Moore or Robert Johnson unless or until they [sic] obtained a judgment against John Doe.

Johnson testified that Tennessee Farmers did not pay his UM policy limits in his suit against John Doe before he filed the bad faith suit against Tennessee Farmers. Tennessee Farmers presented undisputed proof that it was not legally obligated to

make the UM payment prior to trial or to a jury determination of fault. Tennessee Farmers also argued in its defense that the pre-trial timing of the UM payments was evidence of its good faith. In permitting this evidence to be considered by the jury, the trial court stated:

> Ladies and gentlemen of the jury, I'm going to let this proof in for one very limited purpose.... I'm allowing this proof only for you to consider, along with everything else as it relates to circumstantial evidence, as to whether or not it was bad faith on failure to pay the liability claims. I want to make it clear. There can be no recovery, and whether you agree or disagree or whether [Tennessee Farmers] should or shouldn't have paid it quicker, sooner, or not at all, is irrelevant other than as to how this proof relates to whether or not [Tennessee Farmers is] guilty of bad faith on the liability claim.

In addition, the trial court correctly instructed the jury that "[w]hether or not Tennessee Farmers properly paid or improperly delayed payment of Mr. Johnson's uninsured motorist claim does not mean they [sic] are guilty of bad faith in failing to pay the claim of Mr. Moore on Mr. Johnson's liability coverage." Both instructions informed the jury that it was not to consider whether Tennessee Farmers had a duty to pay the UM claims prior to trial in determining whether Tennessee Farmers had acted in bad faith. The jury is presumed to have followed the instructions of the trial court. *State v. Reid,* 164 S.W.3d 286, 346 (Tenn.2005). In light of the proof and the instructions, we hold that the trial court's refusal to charge this special jury instruction was not prejudicial error.

## C. Trial Court's Comments on the Evidence

■■■■ Article VI, section 9 of our state constitution prohibits trial judges from commenting on the evidence in a case.[1] Judges must be careful in expressing or intimating an opinion regarding disputed questions of fact. *Kanbi v. Sousa,* 26 S.W.3d 495, 498–99 (Tenn.Ct.App.2000). They must also refrain from making statements that may reflect on the weight of the evidence or the credibility of the witnesses or that might influence the jury concerning the facts. *State v. Suttles,* 767 S.W.2d 403, 406–07 (Tenn.1989). The party complaining of an improper comment by a judge must show that the comment "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R.App. P. 36(b); *Kanbi,* 26 S.W.3d at 499. If the complaining party is unable to show unfair prejudice, then the trial court's comments will not be construed as reversible error. *Kanbi,* 26 S.W.3d at 499.

■■■■ At trial, Moore's lawyer was asked by Johnson if he was aware of an offset provision in Moore's policy providing that Moore was prevented from recovering his UM limits if he first received Johnson's liability limits. Moore's lawyer answered, "I don't know how that could be." The trial judge stated, incorrectly, "I hold that's not what the policy provides. Let's move on." The trial court's comment was clearly an improper characterization of the evidence. However, the trial court's comment was brief and was made early in the course of a three-day trial. After this comment, testimony was offered concerning the actual existence and applicability of the provision. In fact, both parties relied upon the existence of the provision and the

---

1. Article VI, section 9 of the Tennessee Constitution provides: "The Judges shall not charge juries with respect to matters of fact, but state the testimony and declare the law."

entire policy was entered as an exhibit. We therefore hold that the trial court's erroneous comment did not more probably than not affect the judgment or result in prejudice to the judicial process. Tenn. R.App. P. 36(b).

 The trial court also erroneously commented about the role of Buxton, the attorney hired by Tennessee Farmers to represent Johnson in the action brought by Moore. The trial court twice commented in the presence of the jury that "everybody knew" that Tennessee Farmers hired Buxton. The trial court then stated, "Everybody knew he [Buxton] was representing Tennessee Farmers." Buxton was actually representing Johnson, not Tennessee Farmers, and the trial court misstated Buxton's position. The proof, however, clearly and repeatedly demonstrated Buxton's role in representing Johnson and also Buxton's duty to investigate and report his findings to Tennessee Farmers. The jury charge also correctly stated Buxton's role. The trial court instructed the jury, in pertinent part:

> Mr. Buxton was the attorney for Mr. Robert Johnson. Tennessee Farmers did not have the right to control the details of Mr. Buxton's performance, the attending strategy or tactics he employed, or limit his professional discretion in regard to the representation. And I therefore charge you that Tennessee Farmers would not be liable for any negligence of Mr. Buxton as Mr. Johnson's attorney. However, Mr. Buxton also had a duty to report to Tennessee Farmers as to the investigation, evaluation, and representations as to the liability claim against Mr. Johnson.

The jury is presumed to have followed the trial court's instructions. *Reid,* 164

S.W.3d at 346. Therefore, we hold that this comment by the trial court, although error, did not more probably than not affect the judgment or result in prejudice to the judicial process. Tenn. R.App. P. 36(b).

### III. CONCLUSION

We agree with the Court of Appeals that Tennessee Farmers' motion for a directed verdict was properly denied. We reverse the Court of Appeals' judgment setting aside the jury verdict and reinstate the jury verdict in favor of Johnson. Costs are assessed to the appellee, Tennessee Farmers Mutual Insurance Company, and its surety, for which execution may issue if necessary.