IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 22, 2011 Session

# PATTI ZAKOUR, A/K/A PATTI SMITH, DECEASED, BY NEXT OF KIN, INDIVIDUALLY AND AS NATURAL CHILDREN, NEXT FRIEND AND ON BEHALF OF ANY AND ALL WRONGFUL DEATH BENEFICIARIES OF PATTI ZAKOUR, A/K/A PATTI SMITH, DECEASED v. UT MEDICAL GROUP, INC.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002051-08     D.J. Alissandratos, Retired Chancellor**

---

**No. W2010-01499-COA-R3-CV - Filed May 19, 2011**

---

The trial court granted Defendant's motion to set aside the judgment arising from a jury verdict in favor of Plaintiffs in this medical malpractice/wrongful death action. It also conditionally granted Defendant's alternative motion for a new trial. In light of Abshure v. Methodist Healthcare, we vacate the judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Daniel A. Seward, Memphis, Tennessee, for the appellants, Patti Zakour, deceased, by next of kin, Jacob Shores, Eric Nelson, Leif Nelson and Misty Nelson.

John H. Dotson and Michael L. Robb, Memphis, Tennessee, for the appellee, UT Medical Group, Inc.

**MEMORANDUM OPINION**[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion

(continued...)

This is the second appeal in this medical malpractice lawsuit. On March 8, 2000, Patti Zakour (Ms. Zakour) filed a complaint in the Circuit Court for Tipton County against Nancy Moultrie-Rockstroh, M.D.; Scott Craig, M.D; John Kelly, M.D.; the University of Tennessee Medical Group a/k/a Family Practice Center ("UTMG"); Baptist Memorial Hospital–Covington; Soheil Hanna, M.D; and Independent Radiology Associates, PLC. In her complaint, Ms. Zakour alleged that Defendants failed to timely diagnose and failed to properly treat her breast cancer. Only UTMG and Dr. Craig remained as defendants when the matter was tried. The trial court entered a judgment on a jury verdict in favor of the Defendants, and Ms. Zakour appealed. We affirmed, and Ms. Zakour appealed to the Tennessee Supreme Court. During the pendency of her appeal, Ms. Zakour died of cancer and her four children (hereinafter, "Plaintiffs") were substituted as parties. The supreme court reversed and remanded upon determining that Defendants' peremptory challenges against African-American jurors were not race-neutral, and that Defendants had failed to rebut Ms. Zakour's prima facie case of purposeful gender discrimination with respect to its peremptory challenges against female jurors. The supreme court held that the peremptory challenges therefore violated *Batson v. Kentucky*, 476 U.S. 79 (1986), and remanded the case for a new trial. *Zakour v. UT Medical Group, Inc.*, 215 S.W.3d 763 (Tenn. 2007) ("*Zakour I*").

The matter was set for a new trial in Tipton County. On April 25, 2008, Plaintiffs voluntarily non-suited their action and filed a complaint in the Circuit Court for Shelby County, naming UTMG as the sole Defendant. In their complaint, they asserted UTMG was liable for damages caused by alleged negligent acts and omissions of its employees, Dr. Scott Craig (Dr. Craig), Dr. Nancy Rockstroh (Dr. Rockstroh), and Dr. John Kelly (Dr. Kelly), based upon the theory of respondeat superior. They prayed for compensatory damages in the amount of $15,000,000 for damages arising from alleged medical malpractice, negligence, wanton conduct, reckless conduct, wrongful death, and constitutional violations. Plaintiffs also prayed for punitive damages in the amount of $30,000,000, and for compensatory damages for loss of consortium in the amount of $1,000,000.

UTMG answered, moved the court to dismiss the matter for failure to state a claim, and asserted a number of affirmative defenses, including comparative fault and improper venue. The trial court denied UTMG's motion to dismiss on March 3, 2009. This court denied permission for interlocutory appeal in June 2009. Relying on this Court's opinion in

---

[1](...continued)
would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

*Abshure v. Upshaw*, No. W2008-01486-COA-R3-CV (Tenn. Ct. App. Mar. 17, 2009), UTMG filed a motion to dismiss Plaintiffs' claims based on the acts and omissions of Dr. Craig and Dr. Rockstroh. The trial court granted UTMG's motion in November 2009.

In November 2009, Plaintiffs amended their complaint to add a claim for violation of constitutional rights and a claim for direct negligence arising from negligent supervision. Plaintiffs amended their prayer for damages and sought $30,000,000 in compensatory damages for medical malpractice, negligence, wanton conduct, reckless conduct, and wrongful death; punitive damages in the amount of $30,000,000; compensatory damages in the amount of $5,000,000 for loss of consortium and severe emotional distress; and damages in the amount of $10,000,000 for constitutional damages. Plaintiffs demanded a trial by jury.

In February 2010, the trial court granted UTMG's motion for summary judgment with respect to Plaintiffs' claims for violation of constitutional rights and for negligent supervision. The trial court denied UTMG's motion to dismiss for claims based upon acts of Dr. Kelly as time-barred. The matter was tried before a jury in March 2010. UTMG moved for a directed verdict at the close of Plaintiffs' proof and at the close of all proof. The trial court granted the motion with respect to Plaintiffs' claim for punitive damages, but denied UTMG's motions based upon the comparative fault of Ms. Zakour.

On March 26, 2010, the jury returned a verdict in favor of Plaintiffs. The jury assessed 1% fault against Ms. Zakour, and 99% against UTMG. On April 5, 2010, the trial court entered an order on the jury verdict awarding Plaintiffs damages in the amount of $2,574,000. In April 2010, UTMG filed a motion to set aside the verdict or, in the alternative, for a new trial. On May 14, 2011, the trial court entered an order setting aside the verdict, entering judgment in favor of UTMG, and alternatively and conditionally granting UTMG's motion for a new trial. Plaintiffs filed a timely notice of appeal to this Court.

### *Issues Presented*

Plaintiffs assert the trial court erred by granting UTMG's motion to set aside the judgment and, conditionally, for a new trial; by dismissing claims for alleged negligence on the part of Dr. Craig and Dr. Rockstroh in light of *Abshure v. Methodist Healthcare*; by granting UTMG's motion for directed verdict on Plaintiffs' claim for punitive damages; and by awarding UTMG summary judgment with respect to claims of constitutional violations. UTMG asserts the trial court erred by denying its motion to dismiss for lack of venue.

***Discussion***

We turn first to UTMG's assertion that the trial court erred by denying its motion to dismiss for lack of venue. The Tennessee Code provides:

> (a) In all civil actions of a transitory nature, unless venue is otherwise expressly provided for, the action may be brought in the county where the cause of action arose or in the county where the defendant resides or is found.
>
> (b) If, however, the plaintiff and defendant both reside in the same county in this state, then the action shall be brought either in the county where the cause of action arose or in the county of their residence.
>
> (c) Where the action is brought either in the county where the cause of action arose or in the county where the defendant resides, process may be sent to another county as in local action, and it shall not be necessary nor required that the defendant be in the county of action either when the action is commenced or during the time between the commencement of the action and service of process.

Tenn. Code Ann. § 20-4-101 (2009).

UTMG cites *E.R. Garland v. Seaboard Coastline Railroad Co.*, 658 S.W.2d 528 (Tenn. 1983), for the proposition that a defendant is deemed to reside in any county in which it has an office or agency. It further cites *Yeubanks v. Methodist Healthcare*, 227 F.Supp.2d 934 (W.D. Tenn. 2002), for the proposition that, in a wrongful death action, the residency of the decedent at the time of death establishes the residency of the plaintiff in a wrongful death action. UTMG argues that venue is proper only in Tipton County because UTMG resides in Tipton County where it "operates an entire office there, with multiple employees"; the allegedly negligent acts occurred in Tipton County; and Ms. Zakour resided in Tipton County. UTMG asserts that, under section 20-4-101, when the parties reside in the same county, venue is proper only where the parties reside or where the claim arises. Plaintiffs, on the other hand, assert that UTMG clearly resides in Shelby County; that, at the time the lawsuit was filed in Shelby County, UTMG did not own or operate the medical clinic where Ms. Zakour was treated; that three of the four Plaintiffs in the lawsuit reside in Shelby County, and that venue is therefore proper in Shelby County.

In *Yeubanks*, the federal district court relied on Tennessee Code Annotated § 20-5-106(a), which provides:

> [T]he right of action which a person, who dies from injuries received by another, or whose death is caused by the wrongful act, omission, or killing by

another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's ... next of kin; or to the person's personal representative, for the benefit of the person's surviving spouse or next of kin; or to the person's natural parents or parent[.]

Tenn. Code Ann. § 20-5-106(a). The *Yeubanks* court stated:

Tennessee law governs the interpretation of its substantive law. *Legg v. Chopra*, 256 F.3d 286, 289 (6th Cir. 2002). The Tennessee Supreme Court has repeatedly stated that the statute creates only one cause of action. *See Ki v. State*, 78 S.W.3d 876 (Tenn.2002); *Lynn v. City of Jackson*, 63 S.W.3d 332, 336 (Tenn. 2001). The sole cause of action is the one that the decedent would have had, absent death, against the tortfeasor. *Id*. at 879. "The decedent is the sole party who holds a right of action or claim in a wrongful death suit." *Id*. at 879-80 (citing *Lynn*, 63 S.W.3d 332, 336 (Tenn. 2001)). "Tennessee's wrongful death statute does not create a new cause of action for the beneficiaries but instead preserves the right of action of the decedent." *Lynn*, 63 S.W.3d at 336. The survivors or beneficiaries of the decedent are merely "asserting the decedent's right of action *on behalf of the decedent*." *Ki*, 78 S.W.3d [876, 880 (Tenn. 2002)] (emphasis added).

Section 20-5-113 of the Tennessee Code Annotated permits beneficiaries to recover damages for their losses and the decedent's loss. The Tennessee Supreme Court has held that Tenn. Code Ann. § 20-5-113 only establishes the type of damages recoverable for wrongful death and does not create a new right of action in the beneficiaries. *Id.* "[B]eneficiaries do not have an individual claim or cause of action for the wrongful death of the decedent. Instead, the beneficiaries may recover damages for their individual losses that arise pursuant to the right of action vested in the decedent." *Id.* (citing *Kline v. Eyrich*, 69 S.W.3d 197, 207 (Tenn. 2002)).

[Plaintiff] argues that she is not acting as the "legal representative of the estate," but instead is acting individually on her own behalf. It is clear, however, that under Tennessee law any party bringing an action for wrongful death does so in his representative capacity for the decedent. A "legal representative" is defined generally as "one who stands in place of, and represents the interests of, another." Black's Law Dictionary 1041 (4th Ed.1968). Therefore, pursuant to Tennessee law, a beneficiary who brings an action for wrongful death is in reality pursuing the decedent's cause of action.

Although a beneficiary may recover damages for his or her losses, he or she retains no individual right to bring suit. Accordingly, this Court holds that [Plaintiff], in bringing this action for the wrongful death of [decedent], is in effect acting as the decedent's legal representative as contemplated by 28 U.S.C. § 1332(c)(2).

Furthermore, [Plaintiff's] assertion that she is bringing this action in her individual capacity is unavailing. Only the decedent is vested with a right of action which the beneficiaries may assert on behalf of the decedent. To accept [this] argument would require the Court to conclude that Plaintiff's action must be dismissed for failure to state a claim upon which relief may be granted because under Tennessee law a beneficiary of a decedent does not have a right of action for wrongful death absent the decedent's right of action.

*Yeubanks*, 227 F.Supp. 934, 937-38 (W.D. Tenn. 2002). The federal court in *Yeubanks* dismissed the matter for lack of subject matter jurisdiction upon determining that the decedent and defendant were residents of Tennessee, and, therefore, that diversity of citizenship did not exist notwithstanding that plaintiff was a resident of Mississippi.

In *Pack v. Ross*, we stated:

[w]hen venue is possible in only one county, . . . the localization of venue creates subject matter jurisdiction restrictions. This returns us to the Tennessee Supreme Court's pronouncement that "[t]he Courts of our State have no jurisdiction of local actions brought in the wrong county and consent cannot give jurisdiction." Since venue as to [defendant] is limited to one county, *Curtis v. Garrison* teaches that the court of that county alone has jurisdiction to entertain the action. . . . The defendant cannot consent to or confer jurisdiction.

*Pack v. Ross*, 288 S.W.3d 870, 873 (Tenn Ct. App. 2008)(quoting *Curtis v. Garrison*, 211 Tenn. 339, 364 S.W.2d 933, 936 (1963))(internal citations omitted). In *Pack*, we noted that the common law rule for transitory actions was that venue was proper "wherever the plaintiff could find the defendant." *Id.* at 872 (citing June F. Entman, Jurisdiction, Venue and "Localized" Actions in Tennessee, 39 Tenn. B. J. 34 (Apr. 2003)). The purpose of the venue statutes was to "localize" transitory actions in order

to prevent the proceeding whereby a plaintiff would be permitted to catch his neighbor away from home, and the home of his witnesses, and surprise him with a suit, which, however able he may be to resist at home, he is wholly

unable to do so among strangers.

*Id.* at 873, (quoting *Curtis v. Garrison*, 364 S.W.2d 933, 935 (1963)). We specifically declined to "address the theoretical case where the statute permits a choice of two venues." *Id.*

In this case, assuming that Plaintiffs reside in Tipton County, where Ms. Zakour resided prior to her death, UTMG clearly resides in Shelby County, where it undisputedly has its principal place of business. Further, at oral argument of this matter, counsel suggested that venue in this case is more appropriate in Tipton County because all of the alleged acts and omissions giving rise to this dispute occurred in Tipton County. This argument, as we perceive it, is more appropriately characterized as one of forum *non conveniens*.

In *Luna v. Sherwood*, 208 S.W.3d 403, 404 (Tenn. Ct. App. May 14, 2006)(*perm. app. denied* (Tenn. Oct. 30, 2006), a medical malpractice action, the plaintiffs were residents of White County, and the negligent acts complained of occurred in Dekalb County. Two of the four defendants were residents of Dekalb County, and two had their principal places of business in Davidson County. *Id.* Plaintiffs filed their action in Davidson County, and the Dekalb County residents filed a motion to dismiss based on venue or, in the alternative, forum *non conveniens*. The trial court found that venue was proper in Davidson County, and that forum *non conveniens* did not apply to intrastate actions. *Id.* We granted permission for interlocutory appeal and affirmed. Accordingly, insofar as UTMG's argument is based on the doctrine of forum *non conveniens*, it is without merit. We affirm the trial court's denial of UTMG's motion to dismiss for lack of venue.

We next turn to Plaintiffs' assertion that the trial court erred by awarding summary judgment to UTMG on their claim for damages for violations of their constitutional rights. Plaintiffs assert UTMG's peremptory jury challenges in *Zakour I* violated their constitutional rights. The question of whether UTMG's peremptory jury challenges violated the requisites of *Batson v. Kentucky* was litigated in *Zakour I*. The supreme court determined the jury challenges violated *Batson*, and awarded Plaintiffs a new trial. The supreme court's judgment in *Zakour I* was final with respect to this issue. This issue is therefore *res judicata* where Plaintiffs asserted a claim for relief in *Zakour I*, and where the supreme court awarded Plaintiffs relief by granting them a new trial. The doctrine of *res judicata* applies to all issues litigated in a prior lawsuit between the same parties or their privies. *Barnett v. Milan Seating Sys.*, 215 S.W.3d 828, 835 (Tenn. 2007). If the status of the earlier action was such that the parties might have had their claim for damages disposed of had they properly asserted it, *res judicata* applies. *See Brown v. Shappley*, 290 S.W.3d 197, 201 (Tenn. Ct. App. 2008). When the supreme court remanded the matter for a new trial in *Zakour I*, it did not instruct the trial court to assess monetary damages for *Batson* violations. Rather, it awarded relief

in the form of a new trial. That determination was final, and we affirm on this issue.

We next turn to whether the trial court erred in awarding UTMG a judgment notwithstanding the jury's verdict, and whether the trial court erred in dismissing Plaintiffs' claims against UTMG based upon alleged acts/omissions of Dr. Craig and Dr. Rockstroh. With respect to the trial court's dismissal of claims based upon alleged acts or omissions of Dr. Craig and Dr. Rockstroh, UTMG concedes that, under *Abshure v. Methodist Healthcare*, 325 S.W.3d 98 (Tenn. 2010), the dismissal of the claims was improper. Thus, even if we were to affirm the trial court's judgment notwithstanding the verdict based on Plaintiffs' claims with respect to the alleged negligence of Dr. Kelly, this matter must be remanded to the trial court for further proceedings.

UTMG asserts, however, that the trial court's judgment with respect to acts of Dr. Kelly was based on its determination that Dr. Kelly's duty to Ms. Zakour was limited to a brief time-span, and that any actions he may or may not have taken during this time-span did not proximately cause Ms. Zakour's injury. Thus, UTMG urges us to affirm the judgment with respect to claims arising from the acts of Dr. Kelly. Plaintiffs, on the other hand, agreed at oral argument and in their reply brief to abandon claims insofar as they are based on alleged acts of Dr. Craig and Dr. Rockstroh should we reinstate the jury verdict.

In its May 2010 order, the trial court determined that Dr. Kelly's duty to Ms. Zakour was limited to the time period of June 2, 1998 though July 5, 1998, and that Dr. Kelly owed no duty to Ms. Zakour after July 5, 1998. The trial court found that Plaintiffs had failed to present evidence sufficient to sustain a jury verdict that any acts or omissions on the part of Dr. Kelly caused Ms. Zakour any injury during the time in which he owed Ms. Zakour a duty of care. Thus the trial court's judgment, as we perceive it, was based on its determination with respect to causation. The trial court also alternately determined that, in the event this Court reversed or vacated the judgment notwithstanding the verdict, UTMG's motion for new trial would be granted because the verdict was contrary to the weight of the evidence.

A judgment notwithstanding the verdict is governed by the same standard of review as a directed verdict and is subject to the provisions of Tennessee Rule of Civil Procedure 50. *Mairose v. Fed. Express Corp.*, 86 S.W.3d 502, 511 (Tenn. Ct. App. 2001). Thus, it is appropriate only when reasonable minds cannot differ as to the conclusions to be drawn from the evidence. *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). Upon review, we must construe all evidence in favor of the nonmoving party and disregard all countervailing evidence. *Id.* With a directed verdict or judgment notwithstanding the verdict, "the trial court may not weigh the evidence, pass on witness credibility, or substitute its judgment for that of the jury." *Blackburn v. CSX Transp., Inc.*, No. M2006-01352-COA-R10-CV, 2008 WL 2278497, at *4 (Tenn. Ct. App. May 30, 2008).

Like the trial court, an appellate court is not permitted to weigh the evidence or evaluate the credibility of witnesses. *Johnson*, 205 S.W.3d at 370. If material evidence is in dispute or doubt exists as to the conclusions to be drawn, a motion for a judgment notwithstanding the verdict is properly denied. *Id.* When considering a motion for a new trial, however, the court may weigh the evidence. *Blackburn*, 2008 WL 227849, at *4. A trial court may grant a new trial when the verdict is contrary to the weight of the evidence. *Id.* at *5. The trial court clearly weighed the evidence in this case, and, its judgment was based on its assessment of the weight of the evidence. The trial court's judgment notwithstanding the verdict is vacated, and its alternative grant of UTMG's motion for a new trial is affirmed.

We finally turn to whether the trial court erred in granting UTMG a directed verdict on Plaintiffs' claims for punitive damages. A plaintiff seeking punitive damages must demonstrate, by clear and convincing evidence, that the defendant "acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Punitive damages are warranted when "the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Davis v. McGuigan*, 325 S.W.3d 149, 156 (Tenn. 2010)(quoting *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 531 (Tenn.2008) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.1992))) and citing *see Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 37–38 (Tenn. 2005)). When considering a motion for a directed verdict on a punitive damage claim, the trial court must determine whether the evidence is sufficient, in light of the clear and convincing evidence standard, to submit the claim to the jury. *Sanford v. Waugh & Co., Inc.*, 328 S.W.3d 836, 848 (Tenn. 2010)(citations omitted). With respect to the acts of Dr. Kelly, we find no evidence in this record which would entitle Plaintiffs to punitive damages. Upon remand, Plaintiffs may reassert their claim with respect to the acts and omissions of Dr. Craig and Dr. Rockstroh in a new trial.

### *Holding*

Upon review of the record in this case, and in light of the foregoing, we vacate the trial court's order awarding UTMG a judgment notwithstanding the verdict, and affirm the alternative order granting UTMG's motion for a new trial. This matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellee UT Medical Group, Inc., and one-half to Appellants, Patti Zakour, deceased, by next of kin, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE