FILED
05/09/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 7, 2024 Session

## SUSAN OLIVER ET AL. v. KROGER LIMITED PARTNERSHIP I

Appeal from the Circuit Court for Sumner County
No. 83CC1-2017-CV-806      Joe Thompson, Judge

_____

## No. M2023-00290-COA-R3-CV

_____

A woman fell in a Gallatin, Tennessee grocery store and suffered a labral hip tear.  She and her husband filed suit against the grocery store, alleging claims for premises liability and loss of consortium.  The case proceeded to a jury trial.  After the close of the plaintiffs' proof, the store moved for a directed verdict.  The trial court granted the defendant's motion, concluding that the plaintiffs put forth no proof of constructive notice.  The plaintiffs appeal; discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Brian Dunigan, Goodlettsville, Tennessee, for the appellants, Susan Oliver and Neal Laffely.

Michael H. Johnson, Brentwood, Tennessee, for the appellee, Kroger Limited Partnership I.

## OPINION

### BACKGROUND

This appeal arises from a slip-and-fall lawsuit filed by Susan Oliver and Neal Laffely ("Plaintiffs").  At approximately 7:42 p.m.[1] on November 2, 2016, Ms. Oliver slipped on what she describes as a puddle of water, after placing a pack of bottled water

---

[1] At various points in the record, the fall is described as happening around 7:30 p.m. and shortly before 7:42 p.m.  Thus, it seems undisputed that the fall occurred at some point between 7:30 p.m. and 7:42 p.m.

into the bottom of her shopping cart. There is no video footage of the incident, in part because the bottled-water aisle is not considered a high-theft aisle. Nor did anyone witness Ms. Oliver's fall. Ms. Oliver suffered physical injuries as a result, specifically, a labral hip tear. Plaintiffs filed suit against Kroger Limited Partnership I ("Kroger") on August 23, 2017, in the Circuit Court for Sumner County ("trial court"). Plaintiffs alleged, *inter alia*, that Kroger employees knew or should have known about the hazardous condition and that Kroger breached its duty to maintain its premises in a reasonably safe condition. Mr. Laffely alleged a loss of consortium claim. Plaintiffs requested compensatory damages.

Kroger sought but was denied a summary judgment, and trial was set for February 2 and 3, 2023. Several witnesses testified including Plaintiffs and Kroger employees. Ms. Oliver recounted the day of her fall, explaining that she placed a case of bottled water into the bottom of her shopping cart and then fell as she proceeded to stand and push the cart forward. Ms. Oliver maintains that she essentially "did the splits," hurting her right hip in the process. Once she could stand, Ms. Oliver walked to the customer service desk to report the fall to Kroger employee Michael Watson. Photos in the record show that Ms. Oliver's shin was skinned and bleeding. The then-assistant manager, Kaitlyn Mount, spoke with Ms. Oliver and completed an incident report. The report states that "customer slipped on water in the water aisle[.] She has two bruises and her hip is killing her." This narrative is similar to the customer statement Ms. Oliver concomitantly filled out, which states "slipped and fell on water on the floor in the aisle. Went to find manager to report it – cut my leg on the shin bone right leg and – left knee bruised and swollen – right hip lots of pain."

As to her injuries, Ms. Oliver testified at trial that she experienced debilitating pain and loss of movement following the fall. She explained that she is an avid outdoors-person who enjoys hiking and mountain climbing, all of which has been impossible since the incident at Kroger. Mr. Laffely echoed this testimony and testified that both he and his wife missed significant amounts of work following her fall because Ms. Oliver requires so much care. Ms. Oliver eventually underwent surgery to repair her torn labrum.

The trial court heard from additional witnesses including Mr. Watson, Ms. Mount,[2] and Plaintiffs' expert witness, David Johnson. Ms. Mount's testimony also recounted the evening of Ms. Oliver's fall. While Ms. Oliver maintained in her testimony that she slipped on a fairly large puddle of water, Ms. Mount testified that no Kroger employee ever observed a large puddle. Rather, Mr. Watson told Ms. Mount on the evening in question that he observed a few drops of water on the floor.[3] In his own testimony, Mr. Watson

---

[2] Ms. Mount's deposition testimony was read into the record at trial, and Mr. Watson's video deposition was played in open court.

[3] Ms. Oliver disputed this, claiming that on the evening of November 2, 2016, Mr. Watson told Ms. Oliver he saw water foot prints in the area where Ms. Oliver fell.

stated that the only water he observed was quarter-sized and that he cleaned it up with one paper towel.

Ms. Mount also testified regarding Kroger's aisle-inspection policies, stating that employees are assigned to "sweep" and check the aisles throughout their shifts. A document titled "Sweep/Floor Inspection Report" provides that an employee checked the aisle at issue between 6:00 p.m. and 6:30 p.m. on November 2, 2016, and that the floor's condition was "clean." Ms. Mount confirmed that the report showed that the aisle had not been checked in a formal sweep for over an hour prior to Ms. Oliver's fall and testified that "[t]hey were probably about to start a brand new sweep." Ms. Mount also maintained, however, that as assistant manager, she patrolled the aisles constantly throughout her shift, and she did not see any issues on the bottled-water aisle on November 2, 2016. She testified that the aisle was clean in the moments leading up to Ms. Oliver's fall. Mr. Watson testified that during the evening shift, floor sweeps occur "approximately every two hours."

Plaintiffs' expert, Mr. Johnson, is a forensic engineer who specializes in accident investigation. According to Mr. Johnson, the industry standard for grocery-aisle floor sweeps is once per hour and once every half hour for aisles with liquids. Accordingly, the gist of Mr. Johnson's testimony was that the time intervals between Kroger's aisle inspections were too long, particularly for the bottled-water aisle.

Following the close of Plaintiffs' proof, Kroger moved for a directed verdict. Kroger argued that while it was undisputed that water was on the floor of the aisle the evening Ms. Oliver fell, there was no evidence as to how long the water had been there or whether any Kroger employees saw the water. According to Kroger, "[t]hey've got to show where it came from or how long it had been there. They don't have evidence." In response, Plaintiffs argued that Kroger had constructive notice of the hazardous condition, pointing to Kroger's training materials in the record, which provide that a customer falls in a Kroger once every thirty minutes. Plaintiffs argued that if Kroger employees had patrolled the aisles in a timely manner, they would have discovered the water.

The trial court granted Kroger's motion for a directed verdict. The final order, entered February 14, 2023, provides:

> After argument of counsel, the Court retired to consider the motion. The Court returned and ruled in favor of [Kroger] and granted a Directed Verdict. The Court found that, taking the strongest legitimate view of the evidence in favor of the opponent of the motion, allowing all reasonable inferences in favor of the non-movant and discarding all countervailing evidence, that reasonable minds could not differ; the Plaintiff[s] failed to prove actual or constructive notice of any hazard and therefore their premises liability action fails, as a matter of law. It is therefore Ordered, Adjudged and Decreed:

The [Plaintiffs'] case is Dismissed, with Prejudice. All court costs are assessed against the Plaintiff[s] for which execution may issue.

Plaintiffs filed a timely notice of appeal to this Court.

## ISSUES

Plaintiffs raise the following issues on appeal, which we restate slightly:

I.       Whether the trial court erred in granting a directed verdict to Defendant Kroger, where material evidence exists to support a jury inference that Kroger had constructive notice of the hazard which caused Ms. Oliver's injury?

II.       Should Tennessee adopt the legal principle followed by other jurisdictions such as Georgia, California, and Louisiana, whereby a plaintiff can establish constructive notice by proving that the defendant negligently failed to follow reasonable inspection procedures?

## DISCUSSION

### *Standard of review*

Plaintiffs appeal from the trial court's grant of a directed verdict in Kroger's favor.

A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. *Id.* The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. *Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978). Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638–39 (Tenn. Ct. App. 1993). Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied. *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995).

*Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). Further, we "must take the strongest legitimate view of the evidence in favor of the non-moving party," *id.*, and "review the evidence most favorably to the party against whom the motion is made, give that party the benefit of all reasonable inferences from the evidence, and disregard all evidence contrary to that party's position." *Wortham v. Kroger Ltd. P'ship I*, No. W2019-00496-COA-R3-CV, 2020 WL 4037649, at *6 (Tenn. Ct. App. July 16, 2020) (quoting *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000)).

*Premises liability & constructive notice*

The crux of Plaintiffs' claim is that Kroger owed Ms. Oliver a duty of care to maintain its premises in a safe manner and that the water on which Ms. Oliver slipped was a hazardous condition amounting to a breach of that duty. "Business proprietors are not insurers of their patrons' safety." *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). Nonetheless, "they are required to use due care under all the circumstances." *Id.* (citing *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)). In addition to the essential elements of negligence, plaintiffs bringing a premises liability claim must also prove that the alleged hazardous condition "was caused or created by the owner, operator, or his agent," or "if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (quoting *Blair*, 130 S.W.3d at 764).

Here, Plaintiffs do not argue that Kroger created the water puddle or had actual notice of same.[4] Plaintiffs contend that Kroger had constructive notice of the water, or at the very least, that the issue of constructive notice should have been submitted to the jury.

> "Constructive notice" is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997) (quoting *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994)). Constructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it. *Blair*, 130 S.W.3d at 764; *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986). Constructive notice may also be established by showing that the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition." *Blair*, 130 S.W.3d at 765.

*Parker*, 446 S.W.3d at 351–52.

---

[4] Actual notice is "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Jones v. Publix Supermarket, Inc.*, No. M2018-01672-COA-R3-CV, 2019 WL 2404975, at *3 (Tenn. Ct. App. June 7, 2019) (quoting *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994)).

In this case, the trial court rightly concluded that Plaintiffs failed to put forth proof as to Kroger's constructive notice of the condition at issue, namely, the water.[5] Ms. Oliver conceded at trial that she has no proof about how the puddle originated or how long it existed prior to her falling. There is also no proof in the record that any Kroger employee saw the water or knew of any water on the floor in the bottled-water aisle prior to the fall. Rather, the proof shows that multiple Kroger employees inspected the pertinent aisle shortly before Ms. Oliver's fall and deemed it clean. A floor sweep inspection report executed the night of the incident provides that a Kroger employee swept the aisle between 6:00 p.m. and 6:30 p.m. This is also corroborated by Kroger's timekeeping records from November 2, 2016, which show that an employee conducted a floor sweep between 6:07 p.m. and 6:36 p.m. Moreover, Ms. Mount testified that she patrolled the store constantly as part of her managerial duties. While she could not recall the exact minute that she checked the bottled-water aisle, Ms. Mount testified that she indeed walked that aisle prior to Ms. Oliver's fall and that the aisle was clear in the moments leading up to the fall. Nothing in Plaintiffs' proof undercuts this testimony, as Plaintiffs admit they have no information regarding how long the water was on the floor prior to Ms. Oliver's fall. Stated differently, Ms. Mount's testimony that the aisle was clean just before Ms. Oliver fell is not contrary to anything else Plaintiffs offered. Even taking the strongest legitimate view of the evidence in Plaintiffs' favor, there is simply no evidence of constructive notice under these circumstances.

On appeal, Plaintiffs rely on *Workman v. Wal-Mart Stores East, Inc.*, No. M2001-00664-COA-R3-CV, 2002 WL 500988 (Tenn. Ct. App. Apr. 4, 2002), to argue that "[a] plaintiff may use circumstantial evidence to establish constructive notice." *Workman*, however, is factually distinguishable from the case at bar. In *Workman*, a man slipped and fell in a puddle of oily substance in a Wal-Mart. *Id.* at *1. The substance was leaking out of an overturned basket lying in an aisle. *Id.* The case proceeded to trial, and the jury decided in favor of the plaintiff, awarding him $30,000. *Id.* Wal-Mart appealed, arguing in part that the trial court erred in denying Wal-Mart's motion for a directed verdict because the plaintiff could not show how long the spill was present prior to his fall. *Id.* at *3. This Court affirmed the trial court's ruling, noting that the plaintiff was only "required to prove [] that the dangerous or defective condition existed for such a length of time that the [d]efendant knew or in the exercise of ordinary care should have known of its existence." *Id.* In *Workman*, the plaintiff "established that the oily substance was on a main, traveled aisle of the store, that the incident occurred on the busiest shopping day of

---

[5] To be clear, the parties dispute the amount of water present on the floor when Ms. Oliver fell. While Ms. Oliver testified that the water was a puddle approximately two feet in diameter, Kroger employees testified that there were but a few droplets of water in the relevant spot by the time they investigated. Ultimately, the amount of water on the floor is not dispositive in this particular case as it is undisputed that there was at least some amount of water on the floor, even if a small amount, and that Ms. Oliver fell.

the year,[6] that the store was not fully staffed, that the overturned basket was covered with cellophane, yet sufficient time had elapsed to allow the thick, oily substance on the floor to escape its containers and the enveloping cellophane-covered basket and to create an area of 2 to 2½ feet of oily, slippery substance . . ." *Id.*

This Court reasoned that the above circumstances "provide[d] a reasonable basis for the jury's conclusion that a sufficient time interval had passed to charge the premises owner with constructive notice of this dangerous condition." *Id.* Incidentally, the same above-listed circumstances render *Workman* distinguishable from the present case. Here, there is no proof that the water on which Ms. Oliver slipped was in a high-traffic area or that the store was busy when the fall occurred. On the contrary, Ms. Oliver testified that the store was not busy, as it was approximately 7:40 p.m. on a Wednesday evening. In the same vein, Ms. Oliver testified that no one was around when she fell, and there were no witnesses. This is a far cry from *Workman*, in which the fall occurred on the "busiest shopping day of the year…" *Id.* Moreover, while there was sufficient circumstantial evidence in *Workman* to establish that the oily puddle existed for a "sufficient time interval[,]" no such evidence, direct or circumstantial, exists here. *Id.*

Not only is this case distinguishable from *Workman*, it is analogous to cases in which trial courts properly granted, or inappropriately denied, a motion for directed verdict under similar slip-and-fall circumstances. *See, e.g.*, *McIntyre v. CBL & Assocs. Mgmt., Inc.*, No. 03A01-9905-CV-00189, 2000 WL 123979, at *5 (Tenn. Ct. App. Jan. 26, 2000) (affirming directed verdict for defendant in absence of "any proof as to how long the water droplets had been on the floor" and because "[t]here was no evidence presented to the jury by which a reasonable jury could have determined that [the] water had been on the floor for a sufficient length of time that the [d]efendants, in the exercise of reasonable care, would or should have discovered it"); *Robbins v. Memphis Little Theatre Players*, No. 02A01-9601-CV-00018, 1997 WL 585743, at *5 (Tenn. Ct. App. Sept. 23, 1997) (affirming directed verdict for defendant theatre in which plaintiff asserted she slipped and fell on a program left on the theatre's stairs and reasoning that "there was no evidence of how long the crumpled program had been on the floor and whether or not the [t]heatre should have known of it. Therefore . . . there is no evidence that the [t]heatre had actual or constructive knowledge of the alleged dangerous condition"); *Martin*, 946 S.W.2d at 319 (trial court should have directed verdict where "plaintiff [] offered no evidence establishing that the carwash's employees actually knew that a slippery substance had been placed on the outside asphalt[,]" and there was "no evidence showing that this condition had existed for such a length of time that the defendant, exercising reasonable care, should have been aware of it"); *but see Wortham*, 2020 WL 4037649, at *13 (affirming denial of defense motion for directed verdict where plaintiff, who fell as a result of a missing wheel on shopping cart, put forth "strong circumstantial evidence" that "cart was returned to the lobby by Kroger employees without all of its wheels," and jury could thus conclude "that

---

[6] The incident at issue in *Workman* occurred on November 28, 1998, the day after Thanksgiving.

the wheel was missing for a sufficient length of time that Kroger and its employees, by exercising due care, should have discovered the dangerous condition") (some quotations omitted).

The above cases demonstrate that in the absence of any evidence, direct or circumstantial, regarding how a dangerous condition came about or how long it has existed, a jury cannot reasonably infer that the defendant has constructive notice of said condition. A "jury is permitted to reasonably infer facts from circumstantial evidence, and these inferred facts may be the basis of further inferences of the ultimate fact at issue." *Martin*, 946 S.W.2d at 317 (citing *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985)). However, such inferences are only "reasonable and legitimate [] when the evidence makes the existence of the fact to be inferred more probable than the nonexistence of the fact." *Id.* (citing *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 426 (Tenn. Ct. App. 1994)); *see also Wortham*, 2020 WL 4037649, at *10 ("Traditionally . . . the jury was not permitted to draw inferences upon inferences." (citing *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992))). Here, however, there is no evidence, circumstantial or otherwise, from which a jury could infer that the water was on the floor a sufficient amount of time to create constructive notice, as there is no proof as to how the water got there or how long it was there. Indeed, Plaintiffs concede this point, and a Kroger employee testified that she checked the aisle just before Ms. Oliver fell. Because there is no circumstantial evidence from which to infer the relevant facts, Plaintiffs' argument that they may use circumstantial evidence to establish constructive notice is unavailing. To do so would be to draw inference upon inference. *See id.*

Accordingly, the trial court did not err in granting Kroger's motion for a directed verdict, and we affirm that ruling.

*Reasonable inspection*

Plaintiffs next urge this Court to adopt the theory that Kroger is barred from arguing constructive notice because it purportedly failed to follow reasonable inspection procedures. Plaintiffs point out that Kroger's training materials provide that a person falls in a Kroger every thirty minutes, yet Mr. Watson testified that floor sweeps occur every two hours. Plaintiffs argue in their appellate brief:

> Until now, Tennessee courts have not been called upon to decide whether a defendant can assert that it lacked constructive notice when it failed to follow reasonable inspection procedures. However, multiple other jurisdictions have examined this issue, including our neighboring state of Georgia, as well as California and Louisiana. In these jurisdictions, a plaintiff is not required to show how long a hazard existed on the premises if the evidence shows that the defendant failed to conduct reasonable inspections.

- 8 -

Plaintiffs urge that "[i]mportantly, th[is] rule promotes good policy, for it encourages premises owners to establish and adhere to reasonable inspection procedures."

Respectfully, we decline to adopt the foregoing rule. This Court, as an intermediate appellate court, is bound by judicial restraint and rules of procedure requiring us to adhere to the established line. *See* Tenn. Sup. Ct. R. 4(G)(2) ("Opinions reported in the official reporter [] shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction."). While we may look to case law from other states for persuasive authority, such case law is non-binding, and the courts of other states are certainly not "court[s] of competent jurisdiction" for purposes of departing from Tennessee law. *Id.* Moreover, persuasive case law from other jurisdictions is primarily relevant in the absence of controlling Tennessee cases. *See, e.g.*, *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 658 n.2 (Tenn. Ct. App. 2021) (construing a newly enacted Tennessee statute and noting that "[b]ecause there are not yet any Tennessee cases addressing the [statute], we look to the case law of our sister states for helpful authority" (citing *Ottinger v. Stooksbury*, 206 S.W.3d 73, 79 (Tenn. Ct. App. 2006))). The present case, however, centers on constructive notice in the premise liability context, the rules of which have been well-settled by our High Court. Plaintiffs validly point out that no Tennessee court has yet ruled on whether constructive notice arguments should be barred under the above-mentioned circumstances, but such a significant expansion of Tennessee law is beyond our reach and is better directed to the Tennessee Supreme Court.

Thus, we affirm the ruling of the trial court.

## CONCLUSION

The judgment of the Circuit Court for Sumner County is affirmed, and this case is remanded for proceedings consistent with this opinion. Costs on appeal are taxed to the appellants, Susan Oliver and Neal Laffely, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE