IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 25, 2011 Session

## JEFFREY L. DILLON v. NICA, INC., ET AL.

**Appeal from the Circuit Court for Putnam County**
**No. 07N0067      John J. Maddux, Jr., Judge**

---

**No. M2010-02553-COA-R3-CV - Filed December 14, 2011**

---

After his claim for insurance benefits for an injury sustained while making a delivery was denied, plaintiff filed suit against the delivery company, the company providing the insurance coverage and its president, and the third party administrator of the insurance plan, asserting causes of action for breach of contract, violation of the Tennessee Consumer Protection Act, and conspiracy to evade the Tennessee Workers' Compensation Act. The jury found the company providing the insurance and its president liable for violation of the Consumer Protection Act and awarded compensatory and punitive damages. On appeal, the insurance company and president contend that the trial court erred in finding that the plaintiff was an employee of delivery company rather than an independent contractor, in excluding various exhibits and testimony, in denying the president's motion for a directed verdict, and in awarding punitive damages. Because the punitive damage awarded was predicated on the violation of the Tennessee Consumer Protection Act, which does not authorize an award of punitive damages, the award of punitive damages is vacated and the case remanded for a determination of whether an award of treble damages under the Consumer Protection Act should be awarded. In all other respects, the judgment and rulings are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part and Vacated in part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

W. I. Howell Acuff, Cookeville, Tennessee, for the appellants, NICA, Inc., and Thomas M. McGrath.

Jon E. Jones and Andrew R. Binkley, Cookeville, Tennessee, for the appellee, Jeffrey L. Dillon.

# OPINION

Jeffrey L. Dillon was employed as a courier with Priority Xpress and suffered an injury on March 13, 2006 when he slipped and fell while delivering a package. As a result of the incident, Mr. Dillon submitted a claim for benefits to Gallagher Bassett Services, Inc., third party administrator of the insurance program sold and operated by NICA, Inc. This suit arose from the denial of his claim.

Mr. Dillon filed suit against NICA, Inc., Thomas M. McGrath,[1] Gallagher Bassett Services , Inc. ("Gallagher Bassett"), and Priority Xpress, asserting causes of action for breach of contract, violation of the Tennessee Consumer Protection Act, and conspiracy to evade the Tennessee Workers' Compensation Act. Mr. Dillon alleged that, as a condition of his employment with Priority Xpress, he had been required to sign documents stating that he was an independent contractor and to permit NICA, Inc., to deduct a premium for insurance coverage from his paycheck. The complaint further alleged that NICA had sold and operated the insurance plan "with the intention of rejecting valid claims"; that Priority Xpress had failed to investigate the plan before requiring its employees to pay the premiums; that Gallagher Bassett—as third party administrator of the insurance—knew or should have known that NICA was operating the insurance plan "as an instrumentality for defrauding drivers"; that Gallagher Bassett had conspired with NICA to assert "technical 'policy defenses' to valid claims";[2] and that Mr. Dillon had never been provided a copy of his insurance policy.

After settling his claims against Gallagher Bassett, Mr. Dillon proceeded to trial against NICA and Mr. McGrath.[3] Prior to trial, the parties stipulated that the issue of whether plaintiff was an employee or an independent contractor would be decided by the court; the remaining issues would be submitted to the jury. At the close of proof, the trial court announced its finding that plaintiff was an employee of Priority Xpress. Mr. McGrath then moved for a directed verdict on all claims asserted against him individually; the trial court denied the motion. The jury returned a verdict declining to find that the defendants conspired to evade Tennessee Workers' Compensation laws and finding that defendants had

---

[1] Mr. McGrath is the president and founder of NICA, Inc.

[2] A letter denying his claim for disability benefits was appended as an exhibit to the complaint. The letter stated that plaintiff's policy required a physician to deem him "Totally Disabled" within 30 days of the accident in order to receive "Weekly Disability Income Benefits" and that, because plaintiff had not been declared "disabled" by a physician for more than two months after the accident, the claim was denied.

[3] NICA, McGrath, and Priority Xpress were initially each represented by the same law firm and filed an answer denying the allegations of the complaint. The court later entered an order permitting counsel for NICA, McGrath, and Priority Xpress to withdraw, and NICA and McGrath retained their present counsel. Priority Xpress did not retain counsel and did not thereafter appear in this matter.

violated the Consumer Protection Act "with regard to the furnishing of insurance."[4] The jury awarded plaintiff $7,747.34 in compensatory damages plus attorney fees. The jury also found that plaintiff was entitled to punitive damages. A hearing on punitive damages was conducted, and the jury awarded plaintiff $200,000 against NICA and $200,000 against Mr. McGrath. The court made findings affirming the award of punitive damages and entered judgment on the jury's verdict.[5]

Plaintiff appeals and raises the following issues:

1. Did the trial court err in holding that Jeffrey Dillon was an employee and not an independent contractor?

2. Did the trial court err in the exclusion of documentary evidence offered by Thomas McGrath?

3. Did the trial court err in the exclusion from evidence of the applicable year (2005) occupational/accident insurance binder?

4. Did the trial court err in refusing to allow Thomas McGrath to testify concerning the two criminal convictions and the business activities of NICA involved therein?

5. Did the trial court err in refusing to find that the jury's verdict based upon the Tennessee Consumer Protection Act was against the weight of the evidence?

6. Did the trial court err in refusing to dismiss Thomas McGrath individually?

7. Did the trial court err in upholding the jury's award of punitive damages based upon a concert of actions between NICA and Thomas McGrath when the jury expressly found that a conspiracy had not been proven?

8. Did the trial court err in upholding the jury's award of excessive punitive damages?

---

[4] Although breach of contract was set forth as a claim in the complaint, it was not included in the claims submitted to the jury. The record does not reveal the disposition of this claim.

[5] Further proceedings were conducted on August 27, 2010, in which the court awarded plaintiff $54,797.68 in compensatory damages and $450,000 in punitive damages against Priority Xpress. The court also held a hearing on attorney fees and determined that plaintiff was entitled to $101,319.06 in attorney fees from NICA and Mr. McGrath. Those matters are not a part of this appeal.

DISCUSSION

A.  Finding that plaintiff was an employee

The determination of whether the plaintiff was an employee or an independent contractor is a question of law, which we review *de novo* with no presumption of correctness. *Lindsey v. Trinity Communications, Inc.*, 275 S.W.3d 411, 418 (Tenn. 2009) (citing *Cromwell Gen. Contractor, Inc. v. Lytle*, 439 S.W.2d 598, 600 (Tenn. 1969); *Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 630 (Tenn. 2008)).  We review the trial court's findings of fact accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d).

In determining whether one is an employee or an independent contractor, a court is to consider the following factors:

(i)      The right to control the conduct of the work;
(ii)     The right of termination;
(iii)    The method of payment;
(iv)     The freedom to select and hire helpers;
(v)      The furnishing of tools and equipment;
(vi)     Self-scheduling of working hours; and
(vii)    The freedom to offer services to other entities;

Tenn. Code Ann. § 50-6-102(10)(D); *see also Lindsey*, 275 S.W.3d at 418; *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn. 1982).  Although no indicia is "infallible or entirely indicative," our courts have generally recognized that "the primary test for determining claimant's status as employee or independent contractor is the 'right to control.'" *Lindsey v. Smith & Johnson, Inc.,* 601 S.W.2d 923 (Tenn. 1980).  Another factor that has gained significance is the right of termination.  *Masiers*, 639 S.W.2d at 656 (citing *Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858 (Tenn. 1976)).  The power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor.  *Masiers*, 639 S.W.2d at 656 (citing *Curtis v. Hamilton Block Company*, 466 S.W.2d 220 (Tenn. 1971)).

The court made factual findings relative to the statutory factors.  With respect to the right to control the conduct of the work, the court found that plaintiff was required "to pay for an insurance program that he did not want to participate in," to wear a uniform with a Priority Xpress logo on it, to carry a fire extinguisher in his vehicle and an operational pager, to return phone calls within a certain period of time, and to have automobile insurance with $300,000 in liability coverage.  The trial court found that the Independent Contractor Agreement contained two clauses that gave Priority Xpress the right of termination: a termination provision and a pricing provision.  The court held that the termination provision permitted NICA to terminate plaintiff, and that the pricing provision permitted NICA "to

lower his pay . . . to such a low amount that . . . it would not be possible for [plaintiff] to work there. And so, that's basically the right . . . to terminate the plaintiff."[6] As to the factors at § 50-6-102(10)(D)(iii) - (vii), the court found (1) that Priority Xpress controlled the method of payment and that plaintiff was unable to participate in the negotiation of delivery prices; (2) that plaintiff did not have control of his vacation schedule and was required to find replacement drivers if he wanted to take a vacation; (3) that, although Plaintiff furnished his own tools and equipment, Priority Xpress controlled the type and amount of those tools; (4) that Priority Xpress set his work schedule and required him to check in after certain deliveries; and (5) that plaintiff didn't have the time or permission to offer his services to other entities. The court found plaintiff to be credible, a finding as to which we accord considerable deference. *See Whirlpool Corp. v. Nakhoneinh,* 69 S.W.3d 164, 167 (Tenn. 2002).

The evidence does not preponderate against the trial court's findings of fact and these facts support the determination that plaintiff was an employee as defined at Tenn. Code Ann. § 50-6-102(10)(D).[7] We affirm the finding that plaintiff was an employee of Priority Xpress and not an independent contractor.

B. Evidentiary issues

The admissibility of evidence is within the sound discretion of the trial court, and we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004) (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)). This standard of review "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives," *Gonsewski v. Gonsewski*, M2009-00894-SC-R11CV, 2011

---

[6] The termination provision stated that the Agreement:

> may be terminated without cause at any time by either party giving the other party at lease five (5) calendar days written notice of such termination. Either party may terminate this contract immediately with cause upon default or some other material breach.

The pricing provision granted Priority Xpress "the sole and exclusive right to change the delivery charges and prices from time to time and at any time giving written notice to [plaintiff], and any such change shall become effective on the specified date."

[7] In addition, the Independent Contractor Agreement included language which designated plaintiff as an "Independent Contractor," stated that "[plaintiff] . . . wishes to specify his/her relationship to Priority Xpress as that of an Independent Contractor and not that of an employee" and that Priority Xpress had no "right of power to exercise any direction, control or determination over the . . . Contractor's activities . . . in operating his/her business." Our Supreme Court has held that such language is insufficient to establish an independent contractor relationship when the surrounding facts show an employer-employee relationship. *See Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 126 (Tenn. 1990).

WL 4116654, at *3 (Tenn. Sept. 16, 2011), and an abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

Defendants sought to introduce several exhibits from other proceedings involving Priority Xpress, Capital Express, NICA and/or Mr. McGrath, as well as copies of materials from the NICA and Gallagher Bassett websites; they appeal various rulings relative to the admissibility of the proposed exhibits.

1. Exhibit 80

Exhibit 80 was comprised of documents related to a workers' compensation claim filed with the Tennessee Department of Labor and Workforce Development by a Kris Grempler, a courier for Priority Xpress; Mr. Grempler's claim arose out of an injury he sustained on September 29, 2006—approximately six months after Mr. Dillon's injury. The exhibit contained an order entered by a specialist with the Department finding that Mr. Grempler was an independent contractor and denying him workers' compensation benefits.[8] The trial court excluded the exhibit on the grounds that it was not relevant and constituted hearsay. The court also stated that, even if the exhibit was relevant, it would be excluded under Tenn. R. Evid. 403.

While defendants argued that the exhibit was "directly relevant to the question, as best we can prove it without Priority [Xpress] being available as a witness, as to what the relationship was with the independent contractors," the order of the specialist does not set forth any fact upon which the specialist based the finding that Mr. Grempler was an independent contractor. The exhibit does not otherwise contain any evidence bearing on the nature of the relationships Priority Xpress had with its couriers or, more specifically, the relationship Priority Xpress had with Mr. Dillon. The exhibit does not "make the existence of any fact that is of consequence to" the issues in the case more or less probable and, consequently, is not relevant.[9] The trial court did not abuse its discretion in excluding the exhibit on the basis of relevance.

The court also correctly excluded the exhibit as inadmissible hearsay. Defendants argued that the exhibit fell under the business record exception to the hearsay rule. *See* Tenn.

_____

[8] The exhibit also contained a "claim summary," apparently from Gallagher Bassett's records, of the insurance benefits paid to Mr. Grempler through the NICA plan.

[9] Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence which is not relevant is not admissible. Tenn. R. Evid. 402.

R. Evid. 803(6).[10]  The witness through whom the exhibit was tendered for admission, Mr. McGrath, however, was not the custodian of records of either the Tennessee Department of Labor and Workplace Development or Gallagher Bassett, where the documents in the exhibit were obtained; consequently, the record was not admissible as a business record as permitted by the rule and the court did not err in holding that the exhibit did not fall within the claimed exception.

2.  Exhibit 82

Exhibit 82 was an order of dismissal from a proceeding in the Nebraska Workers' Compensation Court which the court excluded on the grounds that it was not relevant and that a proper foundation for its admission was not laid; the court also stated that the exhibit should be excluded under Tenn. R. Evid. 403.

The exhibit shows that a Paul S. Christensen sustained an injury on March 8, 1999, when he was working as a courier for a company called Capital Express, and subsequently filed a claim for workers' compensation benefits; the issue in the case was whether Mr. Christensen was an independent contractor or an employee of Capital Express.  The Nebraska court held that, under Nebraska law, he was an independent contractor, and that he was not entitled to workers' compensation benefits.[11]  Defendants proffered the exhibit "to show a good faith effort by NICA to do just what they said they would do, step up and defend these cases and help clarify the lines wherever they may happen in the country. . . .[t]o support NICA's position that they show up wherever in the country these issues are coming up to clarify these issues on behalf of their independent contractors."

---

[10]  Tenn. R. Evid. 803(6) provides:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

[11]  The court based its decision on the ten factors set forth in *Larson v. Hometown Communications, Inc.*, 540 N.W.2d 339 (Neb. 1995), as well as *Stephens v. Celeryvale Transport, Inc.*, 286 N.W.2d 420 (Neb. 1979), in which the Nebraska Supreme Court stated that a written contract "may be of prime importance" in describing the nature of the relationship.  In finding that Mr. Christensen was an independent contractor, the court in part relied on a written contract that stated that the parties had an independent contractor relationship.

Exhibit 82 does not show or discuss what relationship existed between NICA and Mr. Christensen or NICA and Capital Express or the nature or extent of any responsibilities NICA had to either.[12] The exhibit does not demonstrate whether NICA had any duty to appear in the matter or whether NICA was even a part of the proceedings that ultimately led to dismissal of Mr. Christensen's claim. The exhibit had no relevance in determining whether the defendants violated the Tennessee Consumer Protection Act or conspired to evade Tennessee workers' compensation laws or in resolving any factual dispute.

Likewise, we agree that the exhibit's probative value, if any, was substantially outweighed by the danger of confusion of the issues and misleading the jury. Defendants had stated that they were "not asking the Court to take notice of the [exhibit] in terms of informing [the court's] decision on the independent contractor issue." Their stated purpose was, instead, to show that NICA had defended workers' compensation lawsuits around the country. Other than naming NICA in the caption, however, the order does not show what, if any, action NICA took in regard to the proceeding. The issue before the Nebraska court was whether Mr. Christensen was an independent contractor, and we agree with the trial court that this exhibit had the potential to confuse the issues and mislead the jury.

3. Exhibit 83

Exhibit 83 was composed of copies of pleadings and a judgment of dismissal filed in an action brought in Massachusetts by the Hartford Fire Insurance Company ("Hartford") against Thomas McGrath d/b/a Bay State Associates, Inc. In the case at bar, Mr. McGrath testified that he had pled guilty to two felonies in Massachusetts in 1996 and defendants asserted that Exhibit 83 was introduced to show:

> other facts relevant to that [conviction], including the fact that [Hartford], who if the state was right, should have been able to prevail in this case and get its premium for those very same workers and failed, is directly relevant to the issue of how NICA was operating at the time and continued to operate. . . . the felony convictions didn't have anything to do with their method of operation. It had to do with two anomalies in it, and this is the best proof of one of those anomalies, which is, if they had, in fact, been where the state said they were, they would have owed Hartford these premiums.

The trial court excluded the exhibit on grounds that it was not relevant.

The complaint contained in Exhibit 83 alleged that Mr. McGrath d/b/a Bay State Associates, Inc. owed Hartford $41,059.00 for insurance premiums and sought judgment for

---

[12] Although the case was styled *Paul S. Christensen v. NICA, a/k/a Capital Express*, Mr. McGrath testified that, despite the "a/k/a" in the caption, Capital Express and NICA were not the same business and that Capital Express was "a contracting company."

that amount; the answer denied the allegations of the complaint and asserted various affirmative defenses. The judgment dismissed the lawsuit in favor of Mr. McGrath d/b/a Bay State Associates, Inc. but did not set forth any factual findings or the legal basis of the dismissal.[13] It is not possible to discern from the pleadings or the judgment why the case was dismissed. In addition, the caption of the case identified "Thomas McGrath d/b/a Bay State Associates, Inc." as defendant, and neither the pleadings nor the order of dismissal show how that defendant was related to any of the actions or parties at issue in the instant case. The court properly determined the proposed exhibit to be irrelevant.

    4.  Exhibit 86

Defendants sought to introduce as exhibit 86 copies of pages from NICA's and Gallagher Bassett's internet websites obtained through another internet website known as "The Wayback Machine."[14] The exhibit was fourteen pages, seven of which were copies of pages from the three websites and the remainder being a document entitled "Certain Independent Contractors of NICA, Inc., Schedule of Benefits, Class 1 (Full Time)." Counsel for defendants described the exhibit as "the web history of the MyNICA site[15] from October 4th, 2003," that the exhibit "establishes that this website was operating in October of 2003" and that the schedule of benefits document which was part of the exhibit did not come from NICA's records but "came from the website as the website displays these records." The exhibit was objected to on the basis of lack of a proper foundation being laid for its admission and relevance.

With regard to the foundation for admission of the exhibit, counsel for defendant stated:

> In the form that they are here they did not come from NICA's records. They came from the website as the website displays these records. As they appear on the website however, NICA created the website at that time in history, and linked to Gallagher's website the other documents that are linked to this at that time in history.

With regard to relevance, counsel for defendant stated that the exhibit was offered to show that "the [insurance] plan was available to the world, much less Jeff Dillon, prior to his ever

---

[13] The judgment of dismissal was signed by an "Assistant/Clerk" and appears to reference a second document in which findings were made by "Meagher, J." That document and any findings contained therein were not a part of the proposed exhibit.

[14] Counsel for defendant described "The Wayback Machine" as "a website that captures snapshots of sites as they existed going way back, and you plug in the particular site and it finds the pages as they existed at that time in history."

[15] Counsel explained that MyNICA was a website maintained by defendant, NICA, Inc.

signing on with NICA." The court excluded the exhibit on the ground of authenticity and because "there is no evidence that the plaintiff had access to this."

We agree that the proposed exhibit was properly excluded as evidence. The discussion regarding Exhibit 86, as well as Exhibits 80, 82 and 83, was held during a "jury out" hearing and the court ruled on the admissibility of the exhibits at the conclusion of the hearing. While Mr. McGrath, as president of NICA, may have been able to satisfy the authenticity requirement at Tenn. R. Evid. 901, with respect to the pages comprising the "schedule of benefits" portion of the exhibit, the court correctly held that he could not satisfy the authenticity requirement relative to the entirety of the exhibit as proposed for admission, since he was not employed in any capacity by Gallagher Bassett.[16] It does not appear from the record that any further effort was made to separately admit the "schedule of benefits" portion of the documents into evidence or to make an offer of proof in that regard.

5. 2005 Binder

Defendants complain that the trial court excluded a set of documents which they refer to as the "2005 Binder"[17] and state that the court "first excluded this evidence on day one of the trial, on the basis that the material had not been provided to plaintiff in a timely manner." In support of this statement, they cite to a bench conference which occurred during the examination of Mr. McGrath and which was not transcribed. After the conference the court instructed the jury that "NICA has failed to produce the insurance policy; and therefore, you may draw the conclusions that The Court stated."[18] Defendants' assertion that the court excluded the 2005 Binder in this ruling is not supported by the record.

Defendants contend that they made an offer of proof during the testimony of Mr. McGrath to support their contention that the materials in the 2005 Binder constituted an enforceable contract of insurance; they make specific reference to a 21-page document denominated "Occupational Accident Plan Evidence of Insurance," which they asserted at trial was the "master policy of insurance." In the course of examining Mr. McGrath, counsel for defendants questioned him regarding the documents contained in the 2005 Binder. In the

---

[16] Further, the only information relative to "The Wayback Machine" website was provided by the statements of counsel for defendants.

[17] The "binder" is a 131 page looseleaf document; it is not a binder of coverage as that term is customarily used in insurance matters.

[18] The court had earlier told the jury that the jury could "determine that no such policy exists or if such policy does exist, its been destroyed and/or withheld, and its terms would be unenforceable as to the defendant." The parties subsequently stipulated that defendants had not produced a 2006 policy issued by Lloyd's of London, whom Mr. McGrath testified either underwrote or issued the insurance offered by NICA.

course of a discussion between counsel and the court regarding the relevancy of the materials in the exhibit, the court stated:

> So you haven't produced the policy of insurance, Mr. Acuff, and as a matter of fact I ruled on this before the trial started.[19] And so we've just wasted a lot of time here talking about things other than the policy of insurance. The Court's already ruled on that to start with, and I find no new information that would change the Court's opinion in regard to whether a policy of insurance exists at this time.

As is clear from the quoted excerpt, what defendants characterize as the court's exclusion of the 2005 Binder was, in fact, the court's reiteration of its earlier determination that a policy of insurance germane to the issues in the case had not been produced. Again, their contention that the 2005 Binder was excluded is not supported by the record.[20]

### 6. Mr. McGrath's testimony regarding his two criminal convictions

Plaintiff's counsel called Mr. McGrath as a witness and questioned him regarding proceedings in California and Massachusetts in which he had been involved. Mr. McGrath acknowledged that he had pled guilty to a felony "involving dishonesty in regard to the State of California over a workers compensation matter" and had pled guilty to a felony for mail fraud involving workers' compensation in Massachusetts. On cross-examination by his counsel, Mr. McGrath was asked: "what's the underlying story in the sense of what activity was NICA doing that caught the state's attention?" Counsel for plaintiff objected and asserted that the indictments would be the best evidence of the circumstances surrounding the convictions; a lengthy discussion between the court and counsel ensued. In their brief, defendants cite twenty-one pages of the transcript as containing the testimony, objections and arguments relative to this issue, and also contend that it contains an offer of proof. The cited testimony contains numerous objections by plaintiff's counsel, primarily on grounds that the plea agreements, rather than Mr. McGrath's testimony, were the best evidence of what occurred in California and Massachusetts. Each time that plaintiff's counsel objected, the court permitted argument on the admissibility of the particular testimony and ruled on the objection; when the court sustained an objection, counsel for defendants rephrased the question and continued.

---

[19] The court's statement references a ruling made prior to trial. Neither a written order nor an oral ruling on any such pre-trial matter is in the record; defendants do not assign error to any ruling of the court made prior to trial.

[20] The record shows that counsel for defendants did interrogate Mr. McGrath at length without objection relative to some of the materials in the 2005 Binder but that, following the statement of the court quoted above, no effort was made to introduce all or any part of the binder and no offer of proof was made.

Pursuant to Tenn. R. Evid. 103, where the ruling alleged to constitute error is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting its admission must be made known to the court by offer of proof or be apparent from the context; in addition, to constitute error, a substantial right of the party offering the evidence must be affected. At no point during the testimony does counsel or Mr. McGrath make an offer of proof as to what the testimony which they contend to have been erroneously excluded would have been, and we cannot infer the substance of the testimony from the discussion between counsel and the court; we do not presume that the substantial rights of either defendant were affected by the rulings. Accordingly, this issue was not preserved for appeal, and we affirm the trial court's ruling.[21]

C. Whether the verdict was supported by the evidence

Defendants filed a motion for new trial, asserting that a new trial should be granted because, *inter alia*, the jury's finding that defendants violated the Tennessee Consumer Protection Act was against the weight of the evidence. In the order denying the motion, the court stated that "the Court made an individual review of the evidence in this case as the 13[th] juror and found the evidence preponderated in favor of the jury's verdict." On appeal, defendants assert that a new trial should be granted because the verdict that the defendants violated the Consumer Protection Act was not supported by material evidence.

In reviewing the verdict of the jury, we do not reweigh the evidence or determine credibility of witnesses; rather we take the strongest legitimate view of all the evidence to uphold the verdict. We assume the truth of all evidence that supports the verdict and discard all contrary evidence; allow all reasonable inferences to sustain the verdict; and, if there is any material evidence to support the verdict, we affirm the verdict. *Harper v. Watkins*, 670 S.W.2d 611, 631 (Tenn. Ct. App. 1983); *Marshall v. Cintas Corp., Inc.*, 255 S.W.3d 60, 72 (Tenn. Ct. App. 2007); *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 at 129 ("[W]hen the trial judge has approved the verdict, the review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed.").

The Tennessee Consumer Protection Act was enacted to provide statutory remedies beyond common-law fraud actions for consumers and legitimate business enterprises victimized by unfair or deceptive business acts or practices. See Tenn. Code Ann. § 47-18-102; *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). In order to recover under the Act, the plaintiff must prove: "(1) that the defendant engaged in an unfair and deceptive act or practice declared unlawful by the T.C.P.A. and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any

---

[21] We also note that, although the court initially sustained objections to some of Mr. McGrath's testimony on the basis of the best evidence rule, the court offered to revisit the issue when counsel for defendants produced the indictments and plea agreements. Defendants did not introduce those documents, and the admissibility of Mr. McGrath's testimony regarding the matter was not considered again.

other article, commodity, or thing of value wherever situated. . . .'" *Tucker*, 180 S.W.3d at 115 (citing Tenn. Code Ann. § 47-18-109(a)(1)). Our Supreme Court has stated that a "deceptive act or practice" is, in essence, a material representation, practice, or omission likely to mislead reasonable consumers to their detriment. *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009). While the Act does not define the terms "unfair" and "deceptive," it does set forth specific "unfair or deceptive acts or practices" that are declared unlawful and in violation of the Act. Tenn. Code Ann. § 47-18-104(b).

Upon our review of the evidence and affording the jury's verdict the inferences to which it is entitled, the verdict that defendants violated the Consumer Protection Act is supported by material evidence, both testimonial and documentary.

D. Denial of Mr. McGrath's motion for a directed verdict

At the close of proof, Mr. McGrath moved for a directed verdict in his favor, asserting that the testimony showed that all of his activities were done in his capacity as President or CEO of NICA. The court denied the motion, holding that "the Court is of the opinion that there is sufficient evidence to present . . . this jury Mr. Thomas McGrath as a defendant in this case . . . ." Following the entry of the trial court's final judgment, Mr. McGrath filed a motion seeking to have the judgment against him set aside; the motion was denied. On appeal, he contends that he should have been dismissed from the case because "there has been no showing . . . of individual action and no showing of facts as would be required to make the shareholder liable for the actions of the corporation."

This Court reviews a trial court's decision on a motion for directed verdict *de novo*, without a presumption of correctness, utilizing the same standard employed by the trial court. *Biscan v. Brown*, 160 S.W.3d 462, 470 (Tenn. 2005). When ruling on a motion for directed verdict, a court must "review the evidence in the light most favorable to the non-moving party, give the non-moving party the benefit of all reasonable inferences, and disregard all the evidence contrary to the non-moving party's position." *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (citing *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Addaman v. Lanford*, 46 S.W.3d 199, 203 (Tenn. Ct. App. 2000)). A motion for directed verdict should be denied "if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence." *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). In reviewing the denial of the directed verdict, we "take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence." *Id.*

Trial testimony was that Mr. McGrath was the founder and sole shareholder of NICA. Mr. McGrath testified that NICA's program and business plan was created, developed, and implemented by him, and that he personally solicited businesses such as Priority Xpress and other courier companies to join the program. He further testified that he told Priority Xpress

that NICA would indemnify it if Priority Xpress would sign its drivers up with the NICA program and told Gallagher Bassett that NICA intended to indemnify courier companies affiliated with NICA from workers compensation claims. Construing the testimony and evidence in plaintiff's favor, reasonable minds could find that Mr. McGrath, alone or in concert with NICA, violated the Consumer Protection Act and was personally liable for the damages sustained by plaintiff. Accordingly, the court did not err in denying the motion for directed verdict. Upon the same proof, applying the material evidence standard to the motion Mr. McGrath filed after trial, the court did not err in denying the motion.

E. Punitive Damages

Defendants assert that the trial court erred in upholding the jury's award of punitive damages and that the amount of punitive damages awarded to plaintiff was excessive.

After the jury reported its verdict, the court read the verdict form as follows:

> THE COURT: All right, ladies and gentlemen of the jury, I'm going to read what the verdict form says and then I'll ask you to raise your hand if you do agree with this. It says number 1, Did one or more of the defendants in a conspiracy act or cause drivers to be mislabeled as independent contractors rather than employees for the purposes of evading Tennessee Workers' Compensation Laws? And the answer is, No.
> And in question number 2, Did one or more of the defendants acting alone or in concert violate the Tennessee Consumer Protection Act with regard to the furnishing of insurance? The answer is, Yes.
> If you answered "Yes", what amount of damages did Jeff Dillon sustain as a result? And the answer is, $7,747.34 plus pertinent attorneys' fees to this case, 9 weeks at 70 percent of gross averagepay, $545.86 equals $4,912.74 plus Jeff Dillon insurance premium and application fee, $2,834.60 cents.
> So, is the total then 7747.34; is that correct?
> THE JURY FOREPERSON: Yes, your honor.
> THE COURT: Okay. And then, going below that, If you answered "Yes" to question 2, was NICA guilty of this? Answer, Yes. If you answered "Yes" to question 2, was Thomas M. McGrath guilty of this? Answer, Yes.
> If you answered "Yes" to, and then (c) part says, If you answered "Yes" to question 2, Do you find that punitive damages should be awarded for the violation of Tennessee Consumer Protection Act against -- number 1, Against NICA, Inc.? Answer, Yes. Against Thomas M. McGrath? Answer, Yes. Dated August 13, 2010, signed by the presiding juror[]; is that correct?
> THE JURY FOREPERSON: (Nodded head).

A hearing on the amount of punitive damages was held, and the jury returned a verdict for punitive damages of $200,000.00 against NICA, Inc. and $200,000.00 against Thomas McGrath.

Punitive damages are not available for violations of the Tennessee Consumer Protection Act. *Paty v. Herb Adcox Chevrolet Co.*, 756 S.W.2d 697, 699–700 (Tenn. Ct. App. 1988); *see also Lorentz v. Deardan*, 834 S.W.2d 316, 320 (Tenn. Ct. App. 1992) Rather, the Act provides for an award of treble damages if the defendant's unfair or deceptive act or practice under the Act was willful or knowing.  Tenn. Code Ann. § 47-18-109(a)(3).  Inasmuch as the award of punitive damages was based on the finding that defendants violated the Act, it must be vacated.

Neither of the parties has addressed or raised the applicability of an award of treble damages under the Consumer Protection Act to this case, and such an award was not considered by the trial court.  While there is some overlap between the factors which the trial court considered in its review approving the award of punitive damages[22] and the factors which are to be considered in awarding treble damages for a willful violation of the Act,[23] we are of opinion that any possible award of treble damages is more properly presented in the first instance to the trial court.  Consequently, we remand the case for a determination of whether treble damages should be awarded.

Our holding in this regard renders the challenge as to the amount of punitive damages moot.

---

[22]  The court considered defendants' financial affairs, financial condition, and net worth; the nature and reprehensibility of the defendants' wrongdoing; the impact of defendants' conduct on the plaintiff; the relationship of the defendants to the plaintiff; the defendants' awareness of the amount of harm being caused and the defendants' motivation in causing the harm; the duration of defendants' misconduct and whether the defendant attempted to conceal the conduct; whether the defendant profited from the activity; whether there were previous punitive damage awards based on the same wrongful conduct; whether defendants took remedial action or attempted to make amends or offered to promptly and fairly settle for actual harm caused; and defendants' failure to carry out its statutory obligation to provide a summary of benefits and exclusions for purchasers of its alleged insurance.

[23]  Tenn. Code Ann. 47-18-109(a)(4) provides:

In determining whether treble damages should be awarded, the trial court may consider, among other things:
      (A) The competence of the consumer or other person;
      (B) The nature of the deception or coercion practiced upon the consumer or other person;
      (C) The damage to the consumer or other person; and
      (D) The good faith of the person found to have violated the provisions of this part.

CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court for Putnam County is affirmed in part, vacated in part, and the case remanded.


_____
RICHARD H. DINKINS, JUDGE